**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>　　　　Defendants. | Case No. 6:20-cv-00486-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

    A. The '360 Patent .......................................................................................................... 2

    B. The Accused Products................................................................................................ 3

III. LEGAL STANDARD ........................................................................................................... 4

    A. Direct Infringement.................................................................................................... 4

    B. Induced and Contributory Infringement .................................................................... 4

IV. ARGUMENT ........................................................................................................................ 5

    A. Plaintiff Fails to State a Claim for Direct Infringement ............................................ 5

    B. Plaintiff Fails to State a Claim for Induced and Contributory Infringement ............................................................................................................... 8

        1. Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement ................................................................................................... 8

        2. Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement ................................................................................................... 8

        3. Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement ................................................................................................. 10

        4. Plaintiff Fails to Allege the Requisite Lack of Substantial Noninfringing Uses for Contributory Infringement................................................. 11

V. CONCLUSION.................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
   620 F. App'x 934 (Fed. Cir. 2015) ....................................................................................5, 10

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
   No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...................................5, 10

*Aguirre v. Powerchute Sports, LLC*,
   No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...........................8, 9

*Artrip v. Ball Corp.*,
   735 F. App'x 708 (Fed. Cir. 2018) ............................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................4

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
   C 11–04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) .............................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................4

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
   904 F. Supp. 2d 1260 (M.D. Fla. 2012) ................................................................................9, 10

*Chapterhouse, LLC v. Shopify, Inc.*,
   No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ................................6

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015) ............................................................................................................5, 8

*De La Vega v. Microsoft Corp.*,
   2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .........................................................................4

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
   No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) .......................................11

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ................................................................................................10

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018) .................................................................................................5, 8

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)...........................................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011).............................................................................................................5

*Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*,
   No. 17-1986-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018)............................................6

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)..............................11

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017).......................................................................................4, 8

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...............................................................................................4

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).................10, 11

*Parus Holdings Inc. v. Apple Inc.*,
   No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54
   (W.D. Tex. Feb. 20, 2020) ...................................................................................................9

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681-DOC-ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012)...............10

*Xpoint Technologies, Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010)...................................................................................10

**I.     INTRODUCTION**

The Complaint should be dismissed because it fails to plausibly allege that Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. (collectively, "Defendants") have directly and indirectly infringed the claims of U.S. Patent No. 7,092,360 (the "'360 patent"), which relate to monitoring or testing the performance of a packet scheduler.

Plaintiff WSOU Investments, LLC fails to plausibly state a claim for direct infringement because Plaintiff has not alleged that Defendants' accused products meet each and every limitation of the claims. For instance, the claims require "comparing the *monitored state*" and "*expected state*" of certain recited scheduler elements or parameters, such as "whether a queue is empty or occupied." Plaintiff never alleges that the accused products actually compare the "expected" and "monitored" states of *any* scheduler elements, including those specifically recited in the claims. At best, Plaintiff points to certain "tags" allegedly used in the products and quotes out of context an article that refers to a "compari[son]" of the tags "with real time." D.I. 1 ¶ 19. But Plaintiff never alleges that the accused products actually use these tags to test scheduler performance, let alone to carry out that process *specifically* by comparing the "expected" and "monitored" states of *any* scheduler elements. In fact, that same article on which Plaintiff relies demonstrates precisely the opposite: the tags are used only for the scheduling process *itself* (*i.e.*, determining the order by which data packets are to be transmitted), rather than testing whether a scheduler is working properly—the focus of the '360 patent claims.

Plaintiff's conclusory indirect infringement allegations also should be dismissed. For instance, they are based on Defendants' purported knowledge of the patent *only* as of the date of service of the Complaint, which repeatedly has been held insufficient to meet the *Iqbal/Twombly* standard. Plaintiff also fails to allege other key legal requirements, including specific intent for

1

induced infringement and the lack of substantial noninfringing uses for contributory infringement.

## II.     BACKGROUND

### A.     The '360 Patent

Plaintiff filed the Complaint on June 2, 2020.  Plaintiff asserts that Defendants directly and indirectly infringe at least claim 26 of the '360 patent.  D.I. 1 ¶¶ 27–28, 30–31.  Claim 26 recites:

> A method of monitoring operation of a scheduler, comprising supplying said scheduler with data, monitoring the state of an element of said scheduler, **comparing the monitored state with an expected state for said element**, and outputting the result of the comparison;
>
> wherein said scheduler comprises a computer generated model; and
>
> wherein said scheduler is controlling the departure of data from a plurality of queues, and said element comprises:
>
> **an element for recording whether a queue is empty or occupied, an element for recording the quantity of data contained in a queue, an element identifying a queue from which data is to be output, and an element identifying a group of queues from which data is to be output**.

'360 patent, 13:9–26 (emphasis added).

The '360 patent relates to "monitoring" or testing "the performance of a scheduler" by "comparing the monitored state" of a scheduler "element" with an "expected state" for that element.  *Id.* at 1:8–9, claim 26.  The patent states that a "typical switching element for a communication network has":  (1) an "input interface" "for receiving and temporarily storing incoming data cells"; (2) an "output interface" for "transmitting the incoming data cells onto the next appropriate links of the communication network"; and (3) "a controller for controlling the transfer of data cells between the interfaces."  *Id.* at 1:13–19.

The controller "includes a scheduler, which is responsible for determining the order of queues from which data cells are transferred [from the input interface] to the output interface for transmission onto the network."  *Id.* at 1:26–29.  The patent states that a scheduler has "elements"

or "parameters," and the status of these "elements" and "parameters" can be tested to ensure that the scheduler is working properly. *See, e.g., id.* at 7:64–8:66, 9:27–12:29. An example of a scheduler element is one that indicates whether a queue is "occupied" with data cells, or whether it is "empty." *Id.* at 8:18–21. As depicted in Figure 3A below, an "occupied" queue typically has a value of "1," and an "empty" queue typically has a value of "0." *Id.*



FIG. 3A

To monitor these scheduler elements, "a computer using any suitable programming language" is implemented to "compare" the "expected" and "monitored" (or "detected") states of the elements. *Id.* at 7:49–52, 6:45–61, 7:62–7:48, claim 26. If the comparison does not result in a "match" between those two states, the monitor may "provide a result" that the scheduler is not working correctly. *See id.* at 6:58–61. For example, the "expected state" of an empty queue is the value "0," and thus an error is detected if the empty queue's "monitored state" is instead "1" (since a "1" typically indicates an "occupied" queue, as explained above). *Id.* at 9:57–10:32.

**B.  The Accused Products**

Plaintiff alleges that Defendants' products "incorporating VMware's VeloCloud solutions and vSphere software, such as Dell's PowerEdge servers and VxRail appliances" (the "Accused

3

Products") infringe the '360 patent claims. D.I. 1 ¶ 15. Plaintiff generally alleges that the Accused Products "provide functions for resource management, designated as Network I/O Control (NetIOC), including scheduling." *Id.* ¶ 16. Other than naming "VMware's VeloCloud solutions" a single time in Paragraph 15 of the Complaint, however, Plaintiff provides no factual allegations concerning VeloCloud's purported infringement.

### III. LEGAL STANDARD

#### A. Direct Infringement

A complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." The complaint must include more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must allege non-conclusory facts that make liability "plausible," meaning the facts they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim"). For a claim of patent infringement, the complaint must—at a minimum—plead facts that describe how the allegedly infringing product infringes. *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

#### B. Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]");

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both contributory and induced infringement, Plaintiff must also plead facts to support an inference of each defendant's "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that each defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Affinity Labs*, 2014 WL 2892285, at *7, 21. Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the invention." *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

IV.   **ARGUMENT**

    A.   **Plaintiff Fails to State a Claim for Direct Infringement**

Plaintiff fails to plausibly allege that the Accused Products meet each and every limitation of the '360 patent claims, including the requirement that the monitoring of scheduler elements be achieved specifically by "comparing the monitored state" of a scheduler element "with an expected

5

state for said element."  In fact, although Plaintiff names VMware's VeloCloud as infringing in a single conclusory paragraph (D.I. 1 ¶ 15), the Complaint is otherwise *silent* as to how *any aspect* of VeloCloud meets *any* of the claim limitations.

The *Iqbal/Twombly* standard requires more than a bare-bones allegation that alleged products, like those involving the particular technology in this case, "meet each and every element of at least one claim of the asserted patent."  *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2–3 (E.D. Tex. Dec. 11, 2018) (granting dismissal as to patent claims involving "hardware and software" technology relating to a "transaction receipt system," and holding that "[w]hile screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met."); *see also Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*, No. 17-1986-LPS, 2018 WL 5669168, at *11 (D. Del. Nov. 1, 2018) ("In order to adequately plead direct (and indirect and willful) infringement, a plaintiff needs to have pleaded facts that plausibly indicate that the accused products contain *each of the limitations* found in the claim." (emphasis added)).

Here, the claim limitation requiring a comparison of the "expected" and "monitored" states of scheduler elements is particularly significant because the applicant overcame an obviousness rejection and obtained allowance specifically by following the examiner's suggestion to amend claim 26 (then claim 31) with this limitation.  Rosenthal Decl., Ex. A (5/18/06 Response and Amendment) at 1, 9.  Yet, in the Complaint, Plaintiff never alleges that the Accused Products meet this key limitation.  There is no allegation that the Accused Products compare an "expected state" and a "monitored state" of *any* of the recited scheduler elements.  At most, Plaintiff broadly refers

6

to certain "tags" and quotes out of context a document that refers to a "compari[son]" of the tags "with real time." D.I. 1 ¶ 19. But Plaintiff never alleges that these "tags" have anything to do with monitoring or testing whether the specifically recited scheduler elements are working properly, *e.g.*, whether an empty queue is correctly indicated with a "0." And to the extent Plaintiff asserts that the tags are involved in any comparison, Plaintiff does not allege that the tags are used specifically for the purpose of comparing "expected" and "monitored" states of scheduler elements as the claims require.

In fact, the article on which Plaintiff relies in the Complaint (*id.*) itself shows that these "tags" actually are *not* used to compare an "expected" and "monitored" states of a scheduler element *at all*. Ex. B (Billaud, J.P. et al., "hClock: Hierarchical QoS for Packet Scheduling in a Hypervisor," Association for Computing Machinery, April 15–17, 2013) at 312. Instead, the tags are used for the scheduling process itself: determining the order by which queues will transmit data. *Id.* For instance, the article explains that the "scheduler checks to see if the smallest reservation tag among all queues is not higher than the current time. If that is true, the scheduling is done based on reservation tags" and transmission "from the queue with [the] smallest reservation tag is selected." *Id.* The article states that, otherwise, "the scheduling is done based on share tags and a request from a queue with the smallest share tag is chosen." *Id.* Thus, these tags have nothing to do with "monitoring the *performance* of a scheduler," whether by comparing the "expected" and "monitored" states of scheduler elements or some other method. '360 patent, 1:8–9 (emphasis added).

Thus, because Plaintiff fails to plausibly allege that Defendants have met each and every limitation of the '360 patent claims, and because the documents on which Plaintiff relies in the

Complaint actually demonstrate the opposite, Plaintiff's claim for direct infringement should be dismissed.

### B. Plaintiff Fails to State a Claim for Induced and Contributory Infringement

Plaintiff's indirect infringement claims are also deficient and should be dismissed. As an initial matter, Plaintiff's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement. Beyond that failing, Plaintiff has failed to plead any knowledge of the patent or knowledge of infringement *prior* to the filing of this action. Plaintiff also fails to plead a specific intent to induce infringement. And, Plaintiff has not pled, and cannot plead, that there are no substantial noninfringing uses. Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

#### 1. Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement. *See supra* § IV.A. It is axiomatic that "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement . . . ." *Enplas*, 909 F.3d at 407 (citations omitted); *see also Intellectual Ventures*, 870 F.3d at 1329 ("A finding of direct infringement is predicate to any finding of indirect infringement . . . ."). As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement and these claims should be dismissed.

#### 2. Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement

Plaintiff's indirect infringement claims also fail because they do not plead the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926. As courts in this District have held, the knowledge requirements for indirect infringement require *pre-suit* knowledge. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR,

8

2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").

Despite this clear requirement, Plaintiff's sole allegation of knowledge of the patent is a conclusory statement that "Defendants have received notice and actual or constructive knowledge of the '360 Patent *since at least the date of service of this Complaint*." D.I. 1 ¶ 29 (emphasis added).[1] This Court has rejected identical allegations of knowledge. For example, in *Parus* this Court dismissed indirect infringement claims where plaintiff's only allegation of knowledge of the patent was that "Defendant Apple has had knowledge of the '431 Patent *since at least the filing of the original complaint*." *Parus*, No. 6:19-cv-432, at D.I. 28 (Amended Compl.) (emphasis added), ¶ 44; *see id.*, at Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims). Like the allegations in *Parus*, Plaintiff fails to allege pre-suit knowledge and thus fails to state a claim for indirect infringement. *See id.*; *Aguirre*, 2011 WL 2471299, at *3; *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("Also, because notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would

---

[1] Plaintiff's allegation of knowledge of infringement is likewise deficient as it alleges such knowledge only "[s]ince at least the date of service of this Complaint." D.I. 1 ¶¶ 30–31; *see, e.g.*, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where the only allegations of knowledge of infringement were that "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement of the claims of the '431 Patent" (D.I. 28 (Amended Compl.), ¶ 44)).

vitiate the Supreme Court's holding in *Global-Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement.").[2]

### 3. Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, ***directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities***.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)) (emphasis added). Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through their advertising and promotional materials and some website citations. *See* D.I. 1 ¶ 30. Such conclusory allegations fail to present facts that demonstrate: (1) Defendants knew that the alleged acts infringed, and (2) Defendants knew that the promotion of their products would induce or encourage others to infringe the '360 patent. *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *21 (finding "Plaintiffs generalized

---

[2] Other courts similarly have held that "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, C 11–04049 JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681-DOC-ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012); *Brandywine*, 912 F. Supp. 2d at 1345 ("The weight of authority addressing the knowledge required for indirect infringement . . . requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit.").

allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient"). To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—i.e., "evidence of culpable conduct, direct to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[3]

Plaintiff's inducement claim should be dismissed because the Complaint is entirely silent on a key requirement of induced infringement.

### 4. Plaintiff Fails to Allege the Requisite Lack of Substantial Noninfringing Uses for Contributory Infringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citations omitted). Plaintiff has not done so and cannot do so. Plaintiff's only allegation on these elements is a conclusory statement that repeats the legal elements. *See* D.I. 1 ¶ 31. As the Federal Circuit held in *Artrip,* conclusory allegations are not enough. 735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use"). Plaintiff's failure to raise a plausible inference of no substantial

---

[3] *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint.") (emphasis in original); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

noninfringing uses and materiality is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Complaint in its entirety for failure to plausibly state a claim for relief, without leave to amend. Pursuant to L.R. CV-7(h), Defendants request an oral hearing on the foregoing motion.

Dated:  October 5, 2020      By:  */s/ Barry K. Shelton*
Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX  78734-4775
Telephone:  512.263.2165
Facsimile:  512.263.2166

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Kyanna Sabanoglu
ksabanoglu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of October 2020, the foregoing was filed electronically in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service:

>Brett Aaron Mangrum, Attorney for WSOU
>brett@etheridgelaw.com
>
>Jeffrey Huang, Attorney for WSOU
>jhuang@etheridgelaw.com
>
>Ryan Scott Loveless, Attorney for WSOU
>ryan@etheridgelaw.com
>
>Travis Lee Richins, Attorney for WSOU
>travis@etheridgelaw.com
>
>James L. Etheridge, Attorney for WSOU
>jim@etheridgelaw.com

>>*/s/ Barry K. Shelton*
>>Barry K. Shelton