**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

WSOU INVESTMENTS, LLC d/b/a BRAZOS
LICENSING AND DEVELOPMENT,

                Plaintiff,

      v.

DELL TECHNOLOGIES INC., DELL INC.,
EMC CORPORATION, AND VMWARE,
INC.,

                Defendants.

Case No. 6:20-cv-00486-ADA

**JURY TRIAL DEMANDED**

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................................1

II.     BACKGROUND .................................................................................................................2

        A.      The '360 Patent ................................................................................................2

        B.      Plaintiff's Infringement Allegations ................................................................4

III.    LEGAL STANDARD ..........................................................................................................4

        A.      Direct Infringement .........................................................................................4

        B.      Induced and Contributory Infringement ..........................................................5

IV.     ARGUMENT ....................................................................................................................6

        A.      Plaintiff Fails to State a Claim for Direct Infringement ..................................6

        B.      Plaintiff Fails to State a Claim for Induced and Contributory Infringement............8

                1.      Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement......9

                2.      Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement....................9

                3.      Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement....................11

                4.      Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement................12

V.      CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ...................................................................................5, 11

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...............................5, 6, 12

*Aguirre v. Powerchute Sports, LLC*,
No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) .............................9

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) ......................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................4

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
904 F. Supp. 2d 1260 (M.D. Fla. 2012).............................................................................11

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .............................6

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015).........................................................................................................5, 9

*De La Vega v. Microsoft Corp.*,
2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).....................................................................5

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).......................................12

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)............................................................................................11

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
C.A. No. 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020).....................................10

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
909 F.3d 398 (Fed. Cir. 2018)...........................................................................................5, 9

**TABLE OF AUTHORITIES** *(continued)*

<u>Page(s)</u>

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)...............................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)................................................................................................6

*Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*,
No. 17-1986-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018)................................7

*Hypermedia Navigation LLC v. Google LLC*,
No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)..................12

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
870 F.3d 1320 (Fed. Cir. 2017)...........................................................................5, 9

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .................................................................................5

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015).........10

*Parity Networks, LLC v. Cisco Sys., Inc.*,
No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).....11, 12

*Parus Holdings Inc. v. Apple Inc.*,
No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020) .........................................9, 10

*Proxyconn Inc. v. Microsoft Corp.*,
No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ...................10

*Simplivity Corp. v. Springpath, Inc.*,
No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)................11

*VLSI Tech. LLC v. Intel Corp.*,
C.A. No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019)......................10

## I.       INTRODUCTION

The First Amended Complaint ("Amended Complaint") should be dismissed because it fails to plausibly allege that Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. (collectively, "Defendants") have directly and indirectly infringed the claims of U.S. Patent No. 7,092,360 (the "'360 patent"), which relate to monitoring or testing the performance of a packet scheduler.

Plaintiff WSOU Investments, LLC fails to plausibly state a claim for direct infringement because Plaintiff has not alleged that Defendants' accused products meet each and every limitation of the claims.  For instance, the claims require "comparing the *monitored state*" and "*expected state*" of certain recited scheduler elements or parameters, such as "whether a queue is empty or occupied."  Plaintiff never alleges that the accused products actually compare the "expected" and "monitored" states of *any* scheduler elements, including those specifically recited in the claims. At best, Plaintiff points to certain "tags" allegedly used in the products and quotes out of context an article that refers to a "compari[son]" of the tags "with the real-time value."  D.I. 35 ("Am. Compl.") ¶ 19.  But Plaintiff never alleges that the accused products actually use these tags to test scheduler performance, let alone to carry out that process *specifically* by comparing the "expected" and "monitored" states of *any* scheduler elements.  In fact, that same article on which Plaintiff relies demonstrates precisely the *opposite*:  the tags are used only for the scheduling process *itself* (*i.e.*, determining the order by which data packets are to be transmitted), rather than testing whether a scheduler is working properly—the focus of the '360 patent claims.

The indirect infringement allegations fare no better.  Plaintiff's original complaint alleged knowledge of the patent only as of the date of the Complaint, which this Court has repeatedly held is insufficient to sustain a claim of indirect infringement.  D.I. 1 ("Original Complaint").  The Amended Complaint tries—and fails—to circumvent that clear rule by alleging knowledge based

on the filing of the Original Complaint.  Neither basis is sufficient; Plaintiff still has not adequately

alleged pre-suit knowledge of the patent.  The indirect allegations also fail to allege other requisite

elements of induced and contributory infringement.

## II.   BACKGROUND

### A.   The '360 Patent

Plaintiff filed the Amended Complaint on October 19, 2020.   Plaintiff asserts that

Defendants directly and indirectly infringe at least claim 26 of the '360 patent.  Am. Compl. ¶¶ 27–

32.  Claim 26 recites:

> A method of monitoring operation of a scheduler, comprising supplying said
> scheduler with data, monitoring the state of an element of said scheduler,
> **comparing the monitored state with an expected state for said element**, and
> outputting the result of the comparison;
>
> wherein said scheduler comprises a computer generated model; and
>
> wherein said scheduler is controlling the departure of data from a plurality of
> queues, and said element comprises:
>
> **an element for recording whether a queue is empty or occupied, an element
> for recording the quantity of data contained in a queue, an element identifying
> a queue from which data is to be output, and an element identifying a group
> of queues from which data is to be output**.

'360 patent, 13:9–26 (emphasis added).

The '360 patent relates to "monitoring" or testing "the performance of a scheduler" by

"comparing the monitored state" of a scheduler "element" with an "expected state" for that

element.  *Id.* at 1:8–9, claim 26.   The patent states that a "typical switching element for a

communication network has":  (1) an "input interface" "for receiving and temporarily storing

incoming data cells"; (2) an "output interface" for "transmitting the incoming data cells onto the

next appropriate links of the communication network"; and (3) "a controller for controlling the

transfer of data cells between the interfaces."  *Id.* at 1:13–19.

2

The controller "includes a scheduler, which is responsible for determining the order of queues from which data cells are transferred [from the input interface] to the output interface for transmission onto the network." *Id.* at 1:26–29. The patent states that a scheduler has "elements" or "parameters," and the status of these "elements" and "parameters" can be tested to ensure that the scheduler is working properly. *See, e.g.*, *id.* at 7:64–8:66, 9:27–12:29. An example of a scheduler element is one that indicates whether a queue is "occupied" with data cells, or whether it is "empty." *Id.* at 8:18–21. As depicted in Figure 3A below, an "occupied" queue typically has a value of "1," and an "empty" queue typically has a value of "0." *Id.*



**FIG. 3A**

To monitor these scheduler elements, "a computer using any suitable programming language" is implemented to "compare" the "expected" and "monitored" (or "detected") states of the elements. *Id.* at 7:49–52, 6:45–61, 7:62–7:48, claim 26. If the comparison does not result in a "match" between those two states, the monitor may "provide a result" that the scheduler is not working correctly. *See id.* at 6:58–61. For example, the "expected state" of an empty queue is the value "0," and thus an error is detected if the empty queue's "monitored state" is instead "1" (since a "1" typically indicates an "occupied" queue, as explained above). *Id.* at 9:57–10:32.

3

B.      **Plaintiff's Infringement Allegations**

Plaintiff alleges that Defendants' products "incorporating VMware's VeloCloud solutions and vSphere software, such as Dell's PowerEdge servers and VxRail appliances" (the "Accused Products") infringe the '360 patent claims.  Am. Compl. ¶ 15.  Plaintiff generally alleges that the Accused Products "provide functions for resource management, designated as Network I/O Control (NetIOC), including scheduling."  *Id.* ¶ 16.  Other than naming "VMware's VeloCloud solutions" a single time in Paragraph 15 of the Amended Complaint, however, Plaintiff provides no factual allegations concerning VeloCloud's purported infringement.[1]

Plaintiff's indirect infringement allegations in its Original Complaint amounted to three sentences that parrot the legal elements and a few website links that fail to support Plaintiff's claims.  *See* Original Compl. ¶¶ 30–31.  Those allegations completely failed to allege that Defendants had knowledge of the patent and knowledge of the infringement **before** Plaintiff filed suit.  *See id.*

Plaintiff's Amended Complaint fails to fix the deficiencies in the Original Complaint.  Plaintiff now alleges knowledge of the patent based on the filing of the Original Complaint.  *See* Am. Compl. ¶ 30.

III.    **LEGAL STANDARD**

A.      **Direct Infringement**

A complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."  The complaint must include more than "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] On October 14, 2020, Plaintiff served preliminary infringement contentions.  In those contentions, Plaintiff did not identify VeloCloud as an accused product.

544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plaintiff must allege non-conclusory facts that make liability "plausible," meaning the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.").   For a claim of patent infringement, the complaint must—at a minimum—plead facts that describe how the allegedly infringing product infringes. *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

## B.      Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both contributory and induced infringement, Plaintiff must also plead facts to support an inference of each defendant's "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that each defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014).   The "specific intent" element is "demanding" and requires more than

"unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Affinity Labs*, 2014 WL 2892285, at *7, 21.  Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the invention."  *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## IV.   ARGUMENT

### A.    Plaintiff Fails to State a Claim for Direct Infringement

Plaintiff fails to plausibly allege that the Accused Products meet each and every limitation of the '360 patent claims, including the requirement that the monitoring of scheduler elements be achieved specifically by "comparing the monitored state" of a scheduler element "with an expected state for said element."  In fact, although Plaintiff names VMware's VeloCloud as infringing in a single conclusory paragraph (Am. Compl. ¶ 15), the Amended Complaint is otherwise *silent* as to how *any aspect* of VeloCloud meets *any* of the claim limitations.

The *Iqbal/Twombly* standard requires more than a bare-bones allegation that alleged products, like those involving the particular technology in this case, "meet each and every element of at least one claim of the asserted patent."  *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2–3 (E.D. Tex. Dec. 11, 2018) (granting dismissal as to patent claims involving "hardware and software" technology relating to a "transaction receipt system," and holding that "[w]hile screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to

find that the *Iqbal/Twombly* standard is met."); *see also Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*, No. 17-1986-LPS, 2018 WL 5669168, at *11 (D. Del. Nov. 1, 2018) ("In order to adequately plead direct (and indirect and willful) infringement, a plaintiff needs to have pleaded facts that plausibly indicate that the accused products contain *each of the limitations* found in the claim." (emphasis added)).

Here, the claim limitation requiring a comparison of the "expected" and "monitored" states of scheduler elements is particularly significant because the applicant overcame an obviousness rejection and obtained allowance specifically by following the examiner's suggestion to amend claim 26 (then claim 31) with this limitation.  Rosenthal Decl., Ex. A (5/18/06 Response and Amendment) at 1, 9.  Yet, in the Amended Complaint, Plaintiff never alleges that the Accused Products meet this key limitation.  There is no allegation that the Accused Products compare an "expected state" and a "monitored state" of *any* of the recited scheduler elements.  At most, Plaintiff broadly refers to certain "tags" and quotes out of context a document that refers to a "compari[son]" of the tags "with the real-time value."  Am. Compl. ¶ 19.  But Plaintiff never alleges that these "tags" have anything to do with monitoring or testing whether the specifically recited scheduler elements are working properly, *e.g.*, whether an empty queue is correctly indicated with a "0."  And to the extent Plaintiff asserts that the tags are involved in any comparison, Plaintiff does not allege that the tags are used specifically for the purpose of comparing "expected" and "monitored" states of scheduler elements as the claims require.

In fact, the article on which Plaintiff relies in the Amended Complaint (*id.*) itself shows that these "tags" actually are *not* used to compare "expected" and "monitored" states of a scheduler element *at all*.  Ex. B (Billaud, J.P. et al., "hClock:  Hierarchical QoS for Packet Scheduling in a Hypervisor," Association for Computing Machinery, April 15–17, 2013) at 312.  Instead, the tags

are used for the scheduling process itself:  determining the order by which queues will transmit data.  *Id.*  For instance, the article explains that the "scheduler checks to see if the smallest reservation tag among all queues is not higher than the current time.  If that is true, the scheduling is done based on reservation tags" and transmission "from the queue with [the] smallest reservation tag is selected."  *Id.*  The article states that, otherwise, "the scheduling is done based on share tags and a request from a queue with the smallest share tag is chosen."  *Id.*  Thus, these tags have nothing to do with "monitoring the *performance* of a scheduler," whether by comparing the "expected" and "monitored" states of scheduler elements or some other method.  '360 patent, 1:8–9 (emphasis added).

Thus, because Plaintiff fails to plausibly allege that Defendants have met each and every limitation of the '360 patent claims, and because the documents on which Plaintiff relies in the Amended Complaint actually demonstrate the opposite, Plaintiff's claim for direct infringement should be dismissed.

### B.    Plaintiff Fails to State a Claim for Induced and Contributory Infringement

Plaintiff's indirect infringement claims are deficient and should be dismissed.  As an initial matter, Plaintiff's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement.  Beyond that failing, Plaintiff has further failed to adequately plead any pre-suit knowledge by Defendants of the patent, or pre-suit knowledge by Defendants of alleged infringement.  Plaintiff also fails to plead a specific intent to induce infringement.  And Plaintiff has not pled, and cannot plead, that there are no substantial non-infringing uses.  Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

1.    **Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement**

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement. *See supra* § IV.A.  It is axiomatic that "'[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement.'"  *Enplas*, 909 F.3d at 407 (citation omitted); *see also Intellectual Ventures*, 870 F.3d at 1329 ("A finding of direct infringement is predicate to any finding of indirect infringement . . . .").  As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement, and these claims should be dismissed.

2.    **Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement**

Plaintiff's indirect infringement claims fail because they do not adequately plead the required "knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA*, 135 S. Ct. at 1926.  As courts in this District have held, the knowledge requirements for indirect infringement require **pre-suit** knowledge.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").  Moreover, this Court has held—earlier this year—that allegations of knowledge based on an original complaint are not enough to overcome a motion to dismiss.  *See Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where plaintiff's only allegation of knowledge were that "Defendant Apple has had knowledge of the '431 Patent since ***at least the filing of the original complaint***" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement") (quoting D.I. 28 (Am. Compl.) at ¶ 44 (emphasis added)).

The Amended Complaint includes an erroneous footnote that attempts to distinguish *Aguirre* by asserting that "Delaware courts have since rejected this rule." Am. Compl. ¶ 30 n.1. Plaintiff's statement that Delaware has rejected the pre-suit knowledge requirement is incorrect. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("[T]he complaint itself cannot serve as the basis for a defendant's actionable knowledge."); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, C.A. No. 19-1239-CFC, 2020 WL 4365809, at *2 (D. Del. July 30, 2020) ("'The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim. For that reason, the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement.'") (citation omitted). In any event, *this* Court has expressly adopted the pre-suit knowledge requirement, and continues to do so. *See, e.g.*, *Parus*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020).

Despite this clear precedent, Plaintiff's only allegations of knowledge are based on the filing of its original complaint asserting the same patent, which it dismissed: "Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint. Defendants *received notice and actual or constructive knowledge of their infringement* of the patent-in-suit *since at least the date of service of the original Complaint*." Am. Compl. ¶ 30 (emphasis added). Similar to the allegations in *Parus*, WSOU's allegations of knowledge are limited to references to an original complaint and thus fail to state a claim for indirect infringement. *See id.*; *Parus*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020).[2] Allowing Plaintiff to avoid

---

[2] *See also Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the only allegation that purports to establish the knowledge element is the allegation that the complaint itself *or previous complaints in the same lawsuit establish the defendant's knowledge of the patent*.") (emphasis added); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("'Prior to suit' does not mean prior to the current iteration of the Complaint.").

the pre-suit knowledge requirement by filing a complaint, then simply amending the complaint to allege knowledge based on the original complaint, would be at odds with the knowledge requirement itself.[3]  And, it would elevate form over substance and encourage litigants to use such a tactic to essentially eviscerate the pre-suit knowledge requirement.

Plaintiff's failure to raise a plausible inference of pre-suit knowledge of the patent and knowledge of infringement are fatal to its indirect infringement claims, and as such these claims should be dismissed.

### 3.    Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'"  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).   Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through their advertising, promotional materials, and a few website citations.  *See* Am. Compl. ¶ 31.  Such conclusory allegations fail to present facts that demonstrate: (1) Defendants knew that the alleged acts would infringe, and (2) Defendants knew that the promotion of their products would induce

---

[3] *See, e.g.*, *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("[B]ecause notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in *Global–Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement."  ); *Simplivity Corp. v. Springpath, Inc.*, No. CV 4:15-13345-TSH, 2016 WL 5388951, at *8 (D. Mass. July 15, 2016) ("The suggested 'knowledge via filing' framework dilutes the knowledge requirement to the point of meaninglessness, since by virtue of being sued for infringement, a party necessarily is aware of the patent-in-suit.").

or encourage others to infringe the Asserted Patent.  *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *21 (finding Plaintiff's "generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient").  To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—i.e., "evidence of culpable conduct, direct to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[4]

Plaintiff's inducement claim should be dismissed because the Amended Complaint is entirely silent on a key requirement of induced infringement.

### 4.    Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'"  *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citation omitted). Plaintiff has not pled a lack of substantial non-infringing uses because it cannot do so.  Plaintiff's only allegation on these elements is a conclusory statement that repeats the legal elements.  *See* Am. Compl. ¶ 32.  As the Federal Circuit held in *Artrip*, conclusory allegations are not enough. 735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the

---

[4] *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint.") (emphasis in original); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

"complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use"). Plaintiff's failure to raise a plausible inference of no substantial non-infringing uses is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Amended Complaint in its entirety for failure to plausibly state a claim for relief, without leave to amend.  Pursuant to L.R. CV-7(h), Defendants request an oral hearing on the foregoing motion.

Dated:  October 30, 2020        By:  */s/ Barry K. Shelton*
————————————————————————
                                    Barry K. Shelton
                                    Texas State Bar No. 24055029
                                    bshelton@sheltoncoburn.com
                                    **SHELTON COBURN LLP**
                                    311 RR 620, Suite 205
                                    Austin, TX  78734-4775
                                    Telephone:  512.263.2165
                                    Facsimile:  512.263.2166

                                    Benjamin Hershkowitz
                                    bhershkowitz@gibsondunn.com
                                    Brian A. Rosenthal
                                    brosenthal@gibsondunn.com
                                    Allen Kathir
                                    akathir@gibsondunn.com
                                    Kyanna Sabanoglu
                                    ksabanoglu@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    200 Park Avenue
                                    New York, NY  10166-0193
                                    Telephone:  212.351.4000
                                    Facsimile:  212.351.4035

                                    Y. Ernest Hsin
                                    ehsin@gibsondunn.com
                                    Jaysen S. Chung
                                    jschung@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    555 Mission Street, Suite 3000
                                    San Francisco, CA  94105-0921
                                    Telephone:  415.393.8200
                                    Facsimile:  415.393.8306

                                    Ryan K. Iwahashi
                                    riwahashi@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    1881 Page Mill Road
                                    Palo Alto, CA  94304-1211
                                    Telephone:  650.849.5300
                                    Facsimile:  650.849.5333

                                    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 30, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
