# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | CIVIL ACTION 6:20-CV-00473-ADA |
| | CIVIL ACTION 6:20-CV-00474-ADA |
| | CIVIL ACTION 6:20-CV-00475-ADA |
| | CIVIL ACTION 6:20-CV-00476-ADA |
| Plaintiff, | CIVIL ACTION 6:20-CV-00477-ADA |
| | CIVIL ACTION 6:20-CV-00478-ADA |
| v. | CIVIL ACTION 6:20-CV-00479-ADA |
| | CIVIL ACTION 6:20-CV-00482-ADA |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | PATENT CASE |
| Defendants. | JURY TRIAL DEMANDED |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | CIVIL ACTION 6:20-CV-00480-ADA |
| | CIVIL ACTION 6:20-CV-00481-ADA |
| | CIVIL ACTION 6:20-CV-00485-ADA |
| | CIVIL ACTION 6:20-CV-00486-ADA |
| Plaintiff, | PATENT CASE |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS' OPPOSED MOTION FOR DENIAL OF PLAINTIFF'S REQUEST FOR RECONSIDERATION OF ENTRY OF ACQUISITION BAR

After briefing and argument, the Court adopted a narrowly tailored acquisition bar to prevent the inadvertent use of Defendants' highly confidential technical information to acquire patents in the area of the accused technology that would be asserted back against Defendants. Plaintiff now asks for reconsideration.  Plaintiff's request should be denied.

The need for the acquisition bar is plain; even Plaintiff represents that its outside counsel routinely advises clients in the acquisition and valuation of patents and claims, pertaining to the subject matter at issue in this litigation, that are or will be asserted against Defendants, and that its counsel is doing so presently.  (Ex. 1, Dec. 9 Email Requesting Reconsideration.)  Plaintiff nonetheless argues that the same counsel should have access to Defendants' most sensitive technical information, including source code.  Allowing that access creates an unacceptable risk that Plaintiff's counsel (inadvertently) employs Defendants' confidential technical information in advising clients—to Defendants' detriment.  Here, the proposed acquisition bar simply implements the standard that the Federal Circuit set forth in *Deutsche Bank*, which Plaintiff does not dispute: any individual with access to Defendants' highly sensitive technical information should not be engaged in "competitive decisionmaking" that inappropriately risks disclosure/use of that very information to Defendants' detriment.  Specifically, no individual with access to Defendants' "HIGHLY SENSITIVE TECHNICAL INFORMATION" should advise others on the acquisition or valuation of patents in the same field as those asserted in the present cases *against Defendants*.[1]

---

[1]  The propriety of the proposed acquisition bar does not depend on Plaintiff's counsels' plans to participate in competitive decision making, and only Plaintiff's counsel can attest to such plans absent discovery.  But counsel's admissions about their extensive involvement in precisely the type of competitive decisionmaking that the acquisition bar would preclude supports prohibiting their access to highly confidential technical information in the first instance.  *See ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, C.A. No. 6:07-CV-346, 2008 WL 5634214, at *8 (E.D. Tex. Mar. 14, 2008) (historical involvement by outside counsel in acquisition merited bar precluding access to confidential information entirely).

**Acquisition Bars protect against inadvertent disclosure.** Courts regularly enter protective orders proscribing the intentional misuse of a party's highly sensitive business information obtained during discovery. (*See, e.g.*, Ex. 2, Model Protective Order); Fed. R. Civ. P. 26(c)(1)(G) (allowing for order "requiring that trade secret or other confidential … commercial information not be revealed"). But "there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). For example, it is unrealistic to expect an individual advising a client in making competitive decisions to ignore valuable, confidential information about its client's competitors. *Id.* ("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.") (citation omitted). Providing access to those individuals thus creates an "unacceptable opportunity" for inadvertent disclosure and may cause significant harm to the producing party. *Id.*

In determining whether additional protections are necessary to prevent such inadvertent disclosure, the central question is whether the individuals whose access is challenged are engaged in "competitive decisionmaking." *Id.*; *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Accordingly, courts routinely adopt protective orders that either **(1)** restrict certain individuals from accessing confidential information on the basis of their role as competitive decisionmakers (*e.g.*, Ex. 2, Model Protective Order ¶¶ 9-10 (precluding in-house counsel from access certain highly confidential information)) or **(2)** prohibit individuals who have already accessed such confidential information from future participation in competitive decisionmaking (*e.g.*, *id.* ¶ 12 (prohibiting individuals who accessed "HIGHLY SENSITIVE MATERIAL" from

participating in "prosecution of any patent application pertaining to the field of the invention of the patents-in-suit")). The Federal Circuit has recognized that many activities might implicate competitive decisionmaking and thus a risk of inadvertent disclosure, including those specific to patent law such as patent prosecution.[2] *Deutsche Bank*, 605 F.3d at 1378-79.

The Federal Circuit established that a party seeking a bar on "competitive decisionmaking" activity to prevent inadvertent disclosure must show good cause and that "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381. The risk of inadvertent disclosure must be "balance[d] … against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380.[3]

**There is good cause for entry of the Court's narrowly tailored acquisition bar.** In this litigation, Defendants have produced highly confidential information regarding the function of the accused products, including source code. As reflected in the Court's inclusion of a prosecution bar in its model protective order, there is good cause to protect against the inadvertent disclosure of Defendants' trade secrets by prohibiting individuals with access to that information from

---

[2] Courts regularly apply *Deutsche Bank* in determining both prosecution and acquisition bars. *E.g., Multimedia Content Mgmt. LLC v. Dish Network L.L.C.*, C.A. No. 6:18-00207-ADA, D.I. 93 (W.D. Tex. Sept. 25, 2019) ("MCM"); *E-Contact Technologies, LLC v. Apple, Inc.*, C.A. No 1:11-00426-LED-KFG, 2012 WL 11924448, at *2 (E.D. Tex. Jun. 19, 2012); *Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, C.A. No. 16-10860-PBS, 2019 WL 343242, at *2 (D. Mass. Jan. 25, 2019), *reconsideration denied*, 392 F. Supp. 3d 138 (D. Mass. 2019).

[3] Once a bar is imposed, a party may seek an exemption by showing "on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters [of acquisition] does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and [acquisition] counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Deutsche Bank*, 605 F.3d at 1381.

participating in competitive decisionmaking to which those trade secrets are pertinent and valuable.  Here, Plaintiff is in the business of acquiring rather than prosecuting patents, and Plaintiff's counsel regularly represents such non-practicing entities.  Acquisition is thus a more pertinent competitive decisionmaking concern than prosecution.  *See E–Contact Techs., LLC v. Apple, Inc.*, C.A. No. 1:11-426 LED/KFG, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012) (where prosecution bar is appropriate, "it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents"); *Unwired Planet LLC v. Apple Inc.*, C.A. No. 3:12-cv-00505-RCJ, 2013 WL 1501489, at *3 (D. Nev. Apr. 11, 2013) (acquisition bar particularly pertinent where "[Plaintiff]'s sole reason for existence is to acquire patents and sue companies").  Without such a bar, individuals with access to Defendants' proprietary technical information, including source code, could advise clients on the acquisition and valuation of patents to assert against Defendants using confidential knowledge about how those patents will read onto Defendants' software, even if only inadvertently.  *See Google LLC v. Sonos, Inc.*, C.A. No. 20-03845-EMC-TSH, 2021 WL 1621875, at *2 (N.D. Cal. Apr. 27, 2021) ("untenable to allow people to be in a situation in which highly confidential information known to them would be extremely useful, and then demand they act as though they don't know it.").

Accordingly, after briefing and argument on this issue, the Court agreed with Defendants that the following acquisition bar should be entered:

> Any attorney … and any person … who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL under this Order shall not:  … (b) directly or indirectly advise or participate in the acquisition of any patent or patent application pertaining to the field of the invention of the patents-in-suit, or interest in the same, that is or will be asserted against Defendants; or (c) directly or indirectly advise a patent holder, patent owner, company, or investor, or any of its subsidiaries or affiliates, on the selection or valuation of any patent or claim pertaining to the field of the invention of the patents-in-suit asserted or to be asserted against Defendants,

during the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL, whichever is earlier.

Each aspect of the bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information," as *Deutsche Bank* requires (605 F.3d at 138):

- **"the information designated to trigger the bar"**  The information triggering the bar is limited to "technical information" that is "HIGHLY CONFIDENTIAL" under the Protective Order and expressly excludes "financial data or non-technical business information."  This scope of triggering information is narrower than that in the prosecution bar in the Court's model protective order.  (Ex. 2, Model Protective Order ¶ 12 (not limited to "technical" information).)

- **"the scope of activities prohibited by the bar"**  The bar is tailored to that activity most likely to create a risk of inadvertent misuse of Defendants' sensitive technical information, specifically participation in the "acquisition of" or "selection or valuation of" patents "pertaining to the field of the invention of the patents-in-suit" that are or will be "asserted ***against Defendants***."  Courts regularly enter prosecution bars (which addresses the attempted acquisition of claims via the patent office instead of in the open market) – as does this Court's model order – without any reference to what "prosecution" activities constitute competitive decisionmaking.[4] *Cf. Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-CV-1677, 2014 WL 5804334, at *7 (W.D. Wash.

---

[4]  Similarly, with respect to in-house counsel, the Protective Order (at ¶¶ 9-10) precludes access to "HIGHLY CONFIDENTIAL" information if such counsel "exercise competitive decision making authority on behalf of the client," with no definition regarding the scope of that exercise.  Such provisions appropriately place the burden on individuals who want access to confidential information to request an exception by providing specifics about their actual role, to which the producing party has no access absent discovery.  *See Deutsche Bank*, 605 F.3d at 1379-80 (contrasting clerical prosecution activities such as "reporting office actions or filing ancillary paperwork" with substantive prosecution activities including "making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions … or strategically amending or surrendering claim scope during prosecution.").

July 7, 2014) (entering acquisition bar but declining "to draw, in advance, a fuzzy and unmanageable distinction" between specific acquisition activities).

In response, Plaintiff complains that its counsel may be restricted from "acquisition" activities that minimally risk inadvertent disclosure such as advising on patent "validity" or settlement negotiations.  But such activities are expressly allowed.  (Ex. 3, Disputed Protective Order ¶ 13.)  Importantly, Plaintiff does not dispute that its counsel engages in acquisition activities that are unquestionably "competitive decisionmaking."  Plaintiff's counsel currently represents Plaintiff in its assertion of acquired patents in more than 120 cases pending in this District, and has also represented other non-practicing patent-acquirers such as Uniloc in hundreds of past cases.[5] (Exs. 4 and 5.)

Plaintiff's new proposal to limit the acquisition bar to work done "on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate" significantly undermines the protection to Defendants, particularly where Plaintiff represents that it is presently engaged in acquisition activity on behalf of those other clients.  While Defendants agreed to limit the prosecution bar in this manner as a compromise,[6] such a limitation is not appropriate as to acquisition, which poses a far greater risk given the nature of Plaintiff's business and its counsel's past and current representations.

- • **"the duration of the bar"**  The duration of the bar is in line with this Court's precedent, including in the *MCM* case, and that of others.  *See MCM*, D.I. 93 at 10 (12 months

---

[5]  If Plaintiff seeks an exception for specific "acquisition" activity of its counsel going forward, Plaintiff bears the burden to show that such activity does not implicate competitive decisionmaking and that the harm caused outweighs the risks to Defendants.  *Deutsche Bank,* 605 F.3d at 1381.

[6]  The prosecution bar in the Court's model order contains no such limitation, and for good reason: inadvertent use of Defendants' confidential technical information to advise Plaintiff's counsel's other clients creates an equal if not greater risk of inadvertent use.  Defendants have no objection to adopting the Court's model order on the prosecution bar.

after litigation including appeals); *Intell. Ventures I, LLC*, 2019 WL 343242, at *4 (two years after litigation, gathering cases reflecting the same).

- **"the subject matter covered by the bar"**   The Court's proposal is narrowly tailored.   Because Plaintiff's discovery requests for Defendants' HIGHLY SENSITIVE TECHNICAL INFORMATION concern Plaintiff's attempt to prove infringement, the sensitive technical information is accordingly related to "the field of the invention of the patents-in-suit."[7] Individuals receiving such information should therefore be precluded from participating in the acquisition of patents in that very field.  Plaintiff's proposal to further narrow the subject matter to "the invention of the patents-in-suit" itself would effectively nullify the acquisition bar by limiting it to the already acquired and asserted patents-in-suit themselves.

**Plaintiff will suffer no harm in its choice of counsel.**  Plaintiff does not argue that it will be deprived of trial counsel, only that its lawyers of record here will be frustrated in their efforts to represent *other* clients in the acquisition of patents to assert against Defendants.  *Deutsche Bank* does not contemplate consideration of hardship to Plaintiff's *counsel* in representing *other clients* that may stem from imposition of an acquisition bar.  *See* 605 F.3d at 1380 (balancing risk to Defendants "against the potential harm *to the opposing party*") (emphasis added).  Just as with client conflicts, attorneys regularly make decisions in choosing representations that restrict their ability to ethically represent others in the future.  Regardless, Plaintiff has at least nine other law firms currently representing it in litigations in this District.

For these reasons and those already set forth in Defendants' prior briefing and oral argument, the Court should deny Plaintiff's request for reconsideration.

---

[7] If anything, the subject matter covered by the bar is too narrow since Plaintiff has requested and Defendants have provided technical material and source code that reflects features and functionalities that may relate to fields other than those of the asserted claims.

Dated:  December 15, 2021                  By:   */s/ Barry K. Shelton*_____
                                                  Barry K. Shelton
                                                  Texas State Bar No. 24055029
                                                  bshelton@sheltoncoburn.com
                                                  **SHELTON COBURN LLP**
                                                  311 RR 620, Ste. 205
                                                  Austin, TX  78734-4775
                                                  Telephone:  512.263.2165
                                                  Facsimile:  512.263.2166

                                                  Benjamin Hershkowitz
                                                  bhershkowitz@gibsondunn.com
                                                  Brian A. Rosenthal
                                                  brosenthal@gibsondunn.com
                                                  Allen Kathir
                                                  akathir@gibsondunn.com
                                                  Kyanna Sabanoglu
                                                  ksabanoglu@gibsondunn.com
                                                  **GIBSON, DUNN & CRUTCHER LLP**
                                                  200 Park Ave.
                                                  NY, NY  10166-0193
                                                  Telephone:  212.351.4000
                                                  Facsimile:  212.351.4035

                                                  Y. Ernest Hsin
                                                  ehsin@gibsondunn.com
                                                  Jaysen S. Chung
                                                  jschung@gibsondunn.com
                                                  **GIBSON, DUNN & CRUTCHER LLP**
                                                  555 Mission St., Ste. 3000
                                                  San Francisco, CA  94105-0921
                                                  Telephone:  415.393.8200
                                                  Facsimile:  415.393.8306

                                                  Ryan K. Iwahashi
                                                  riwahashi@gibsondunn.com
                                                  **GIBSON, DUNN & CRUTCHER LLP**
                                                  1881 Page Mill Rd.
                                                  Palo Alto, CA  94304-1211
                                                  Telephone:  650.849.5300
                                                  Facsimile:  650.849.5333

                                                  Emily M. Whitcher
                                                  ewhitcher@gibsondunn.com
                                                  Andrew P. Blythe
                                                  ablythe@gibsondunn.com

Nathaniel R. Scharn
nscharn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:  949.451.4220

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 15th day of December, 2021, I caused the preceding document to be served on all counsel through the Court's ECF system.

*/s/ Barry K. Shelton*
Barry K. Shelton
