UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:20-CV-00473-ADA CIVIL ACTION NO. 6:20-CV-00474-ADA CIVIL ACTION NO. 6:20-CV-00475-ADA CIVIL ACTION NO. 6:20-CV-00476-ADA CIVIL ACTION NO. 6:20-CV-00477-ADA CIVIL ACTION NO. 6:20-CV-00478-ADA CIVIL ACTION NO. 6:20-CV-00479-ADA CIVIL ACTION NO. 6:20-CV-00482-ADA  JURY TRIAL DEMANDED |
| Plaintiff, | | |
| v. | | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | | |
| Defendant. | | |
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:20-CV-00480-ADA CIVIL ACTION NO. 6:20-CV-00481-ADA CIVIL ACTION NO. 6:20-CV-00485-ADA CIVIL ACTION NO. 6:20-CV-00486-ADA  JURY TRIAL DEMANDED |
| Plaintiff, | | |
| v. | | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, and VMWARE, INC. | | |
| Defendants. | | |

**PLAINTIFF'S RESPONSIVE BRIEF OPPOSING
DEFENDANTS' REQUEST FOR AN ACQUISITION BAR**

Defendants' request for an acquisition bar suffers from four fatal flaws. First, the only risk they identify is the same type of risk present in every patent case, not a heightened risk that merits extraordinary relief. Second, Defendants fail to establish that *anyone* subject to this acquisition bar is a competitive decisionmaker. Third, the terms of their acquisition bar cast a wide net and would create personal and professional hardships on WSOU's outside counsel, technical experts, and vendors. And fourth, numerous other aspects of the bar have unreasonable and oppressive scope. The Court should therefore deny Defendants' request for this overly broad, oppressive, and draconian acquisition bar in these cases.

**The only risk of inadvertent disclosure Defendants identify is common to every patent case.** To show good cause for the heightened protections of an acquisition bar, Defendants have the burden to show "a *heightened risk* of inadvertent disclosure." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378, 1381 (Fed. Cir. 2010) (emphasis added). The only risk Defendants have identified is that "Defendants have produced highly confidential information regarding the function of the accused products, including source code." Opening Br. at 3. But that is the very same risk that exists in every patent case and is already covered by other provisions of the protective order. *See id.* at 1378 (stating provisions specifying confidential information may be used only for purposes of the current litigation are generally accepted as an effective way of protecting sensitive information). The only factor that Defendants add to their very generalized expression of risk is that WSOU's counsel are allegedly engaged in "competitive decisionmaking."

**Defendants fail to show that WSOU's outside counsel are competitive decisionmakers.** Although Defendants use the term "competitive decisionmaking" on every page of their brief save one, and they note that this is "the central question" (Opening Br. at 2), they never explain how *anyone* here is a competitive decisionmaker such that the risk of inadvertent disclosure is heightened.

Let's be very clear: Plaintiff's counsel has ***not*** represented that it is presently engaged in acquisition activity on behalf of other clients, ***nor*** did Plaintiff's counsel make "admissions about their extensive involvement in precisely the type of competitive decisionmaking that the

acquisition bar would preclude." *See* Opening Br. at 1 & n.1, 6. Dell's statements there are simply *false* misrepresentations of WSOU's email requesting reconsideration. *Compare* Opening Br. at 1 ("[E]ven Plaintiff represents that its outside counsel routinely advises clients in the acquisition and valuation of patents and claims, pertaining to the subject matter at issue in this litigation, that are or will be asserted against Defendants, and that its counsel is doing so presently.") (citing Ex. 1, Dec. 9 Email Requesting Reconsideration) *with* WSOU's Ex. A (copy of same with emphasis added showing counsel's actual concerns were about the ability to continue practicing law).

Defendants also essentially argue that litigating acquired patents is itself acquisition activity. *See* Opening Br. at 6 (claiming WSOU's "counsel engages in acquisition activities that are unquestionably 'competitive decisionmaking.' Plaintiff's counsel currently represents Plaintiff in its assertion of acquired patents.") But such a generalized statement is inconsistent with *Deutsche Bank* and district court decisions applying it. *See Deutsche Bank*, 605 F.3d at 1378, 1379 (stating it is error to deny access solely on counsel's general position; "[t]he facts, not the category must inform the result … each case should be decided based on the specific facts involved therein"). For example, in *Karamelion LLC v. ADT LLC*, Judge Gilstrap rejected defendants' "request that acquisition bars be imposed in all cases where the plaintiff is a non-practicing entity or otherwise acquires patents." No. 2:18-CV-330 at 6 (D.I. 36) (E.D. Tex. Jan. 24, 2019). *See also*, *e.g.*, *Jenam Tech, LLC v. Samsung Elecs. America, Inc.*, No. 4:19-CV-250, 2020 WL 757097, at *1 (E.D. Tex. Feb. 4, 2020) (explaining good cause requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements) (quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).[1]

WSOU's counsel in these cases have never been involved in decisions about what patents, claims, or portfolios WSOU would acquire. Counsel would be happy to provide declarations to that effect, if the Court believes that is necessary. Moreover, Defendants' argument that "Plaintiff has at least nine other law firms currently representing it in litigations in this District" completely

---

[1] Indeed, Defendants have provided even less evidence of competitive decisionmaking here than the district court found inadequate in *Jenam*. *See id.* at *2.

undermines any argument that any of those firms are "competitive decisionmakers" of the type that create "unique situations" meriting acquisition bars. *See Multimedia Content Mgmt. LLC v. Dish Network LLC*, No. 6:18-CV-07-ADA, D.I. 93, at 6 (W.D. Tex. Sept. 25, 2019) (stating this Court disfavors acquisition bars except in unique situations).[2]

Good cause for a protective order requires showing "a clearly defined and serious injury" to the party seeking protection. *Doc. Gen. Corp. v. Allscripts, LLC*, No. 6:08-CV-479, 2009 WL 1766096, at *2 (E.D. Tex. 2009). Because Defendants failed to show WSOU's counsel engages in competitive decisonmaking, and because they allege only the same generalized risk of inadvertent disclosure inherent in every patent case, they fail to show "clearly defined and serious injury" meriting an acquisition bar and their request should be denied for these reasons alone. *See id.*

**The extreme scope of the acquisition bar does not reasonably reflect the risk Defendants identified.** Even if Defendants had shown some competitive decisionmaking activity and clearly defined, serious injury, the acquisition bar should still be rejected because it will impose oppression and undue burden and expense on WSOU and WSOU's counsel, technical experts, and document vendors. *See* Fed. R. Civ. Pro. 26(c); *see also Deutsche Bank*, 605 F.3d at 1381 (requiring the factors of the bar to "reasonably reflect the risk presented by the disclosure").

**"Pertaining to the field of the invention" is overbroad for acquisition bars.** While this phrase might be appropriate for prosecution bars where the scope of pending claims is in flux, such breadth is not appropriate for conjecture about potential future acquisition of existing patents.

As demonstrated in the patents-in-suit, the field of the inventions has vast breadth far beyond the scope of the claims at issue and untethered to the actual information produced in the cases.[3] Prohibiting WSOU's outside counsel from litigating any other patents related to cloud computing, data networks, communications networks, packet networks, and computer networks

---

[2] In addition to this Court's *MCM* decision noting acquisition bars are disfavored, Exhibit A catalogs decisions in the Eastern and Western District that rejected acquisition bars.

[3] *See, e.g.*, Patent Nos. 9,164,800 at 1:5-8 ("cloud computing") (case 485); 8,913,489 at 1:46 ("data networks") (case 477); 7,539,133 ("communication networks") (case 480); 7,126,921 ("packet networks") (case 478); 7,565,435 ("computer networks") (case 476).

would effectively require counsel to withdraw from current cases involving such technologies and bar counsel from litigating within its areas of expertise. That result simply cannot "reasonably reflect" any risk of inadvertent disclosure Defendants have articulated. *See Deutsche Bank*, 605 F.3d at 1381.

Indeed, in *Deutsche Bank* the Federal Circuit noted the scope of a bar was more properly the "same subject matter of the litigation." *See id.* (citing *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 775 n.14 (D. Md. 2003)). Other courts are in accord. *See*, *e.g.*, *Intell. Ventures I, LLC v. Lenovo Grp.*, No. 16-cv-10860, 2019 WL 343242, at *4 (D. Mass. Jan. 25, 2019) (stating where a bar is appropriate, it should be limited "to the subject matter of the patent-in-suit, consistent with the scope allowed by other courts") (citing cases); *EPL Holdings, LLC v. Apple Inc.*, No. C-12-4306, 2013 WL 2181584, at *5 (N.D. Cal. May 20, 2013) (applying acquisition bar regarding patents "narrowly related to the subject matter of this litigation").

**Applying the acquisition bar to "any attorney" ignores the facts and inappropriately applies mere generalizations.** Paraphrasing *Deutsche Bank*'s analysis: because patent litigation is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent litigation attorney is necessarily involved in competitive decisionmaking. Indeed, denying access to a party's outside counsel on the ground that they litigate patents for that party is the type of generalization counseled against in *U.S. Steel*. The facts, not the category must inform the result. The holding in *U.S. Steel* dictates that each case should be decided based on the specific facts involved therein. *See* 605 F.3d at 1379.

Dell makes no effort to explain why every attorney who has access to Defendants' confidential information should be barred *for years* from practicing law in these broad fields. Their "any attorney" approach deals with generalizations, not facts. Indeed, according to Defendants, merely because outside counsel represent a party that acquires patents, everyone involved in the cases is engaged in acquisition activities. Opening Br. at 6. That argument amounts to an improper *per se* acquisition bar on all litigation counsel who assert acquired patents. *See MedImmune*, 271 F. Supp. 2d at 773-74 (rejecting a *per se* prohibition on use of litigation counsel who also prosecute

4

patents as contrary to Federal Circuit law).[4]

*In re Dell* is directly on point. 498 Fed. Appx. 40 (Fed. Cir. 2012). In that case—well known to Dell but not cited in its brief—the Federal Circuit addressed the "unusual case" where the owner of a party was also the named partner of the law firm representing that party. *Id*. at 41. Despite that partner being a competitive decisionmaker of the party, the Federal Circuit (and two district courts below) refused to apply the restrictions of the protective order to anyone else in the firm. Dell's argument failed because it was based on only "general assumptions" and "categorical presumptions" about the other members of the Desmarais firm, and not on "in the actual 'factual circumstances surrounding each individual counsel's activities, association, and relationship with a party.'" *Id.* at 43 (quoting *U.S. Steel*, 730 F.2d at 1468).

Dell is committing those same errors here. Dell's request to this Court is supported solely on categorical presumptions that litigating acquired patents is acquisition activity, and on general assumptions that litigation counsel routinely advises clients about acquisition and valuation of patents. Opening Br. at 1, 4, 6. Dell has not identified any *factual* circumstances surrounding WSOU's counsel's, experts', or vendors' activities that justify the draconian consequences of Dell's overbroad acquisition bar. Defendants' *per se* rule also conflicts with the right recognized in *U.S. Steel* and *Deutsche Bank* for parties to have the benefit of counsel of their choice. *Deutsche Bank*, 605 F.3d at 1380 (citing *U.S. Steel*). Prohibiting litigation counsel from practicing law in broad fields merely because they represent acquiring companies will act as a chilling effect on those companies' ability to protect their property rights. In the end, an acquisition bar that applies to "any attorney" not only does not "reasonably reflect the risk," it has no connection to the risk whatsoever.

**Applying the acquisition bar to "any person associated with a party" is even more onerous, and even less reflective of the alleged risk.** The clear results of the "any person" provision is that a computer network expert (or cloud computing expert, or communications expert,

---

[4] In fact, the *MedImmune* court concluded the attorney was not subject to a bar in part because he represented many other clients. 271 F. Supp. 2d at 775.

etc.) who receives Defendants' confidential information would be prohibited from serving as an expert in their field of expertise *for years*. That unquestionably harms the expert *and* harms patent owners because it would create a chilling effect on experts willing to work for patent owners. *See* Fed. R. Civ. P. 26(c) ("protect a *party or person* from annoyance, embarrassment, oppression, or undue burden or expense") (emphasis added).[5]

Similarly, a document repository vendor who receives, stores, and searches Defendants' confidential documents would be prohibited from exercising its expertise for additional cases for years.[6] The vendor would have to inquire into the subject matter of later cases—likely not its expertise—and the prohibition wouldn't just be for litigation productions. The vendor could be barred from providing data room services for financings, mergers, corporate acquisitions, due diligences, and numerous other business transactions. That, again, harms both the vendor and parties who need to rely on their services but who would find vendors unwilling to work for patent owners. *See* Fed. R. Civ. P. 26(c). Punishing experts and vendors in this manner simply does not reflect any risk that Defendants can articulate.[7]

**Applying the bar for "any advice" "for anybody" and "any patent or claim" will foreclose legitimate activities of experts, vendors, and outside counsel.** These restrictions similarly do not reflect any risk that Defendants have articulated. They would prohibit WSOU's counsel from advising on how to narrow the claims *in these cases* and whether to advise if any *of these patents* should be dropped. These provisions would also prohibit counsel from advising any other clients about the selection of patents or claims for unrelated litigation against unrelated

---

[5] For this same reason, Defendants' argument that WSOU's counsel is not entitled to protection under *Deutsche Bank* (Opening Br. at 7) simply cannot be reconciled with the plain language of the case and Rule 26(c).

[6] Notably, although they would make experts and vendors subject to the bar, Defendants have not shown that the experts and vendors are competitive decisionmakers, either.

[7] This is very different in the prosecution context. First, few people participate in the specialized, enumerated activities that constitute prosecution activities. Vendors certainly don't "prepare, prosecute, supervise, or assist in the preparation or prosecution of patent applications." To the extent experts do, they tend to specialize in prosecution activities and avoid the reach of prosecution bars. Defendants' bar would deprive litigation experts of their livelihood.

parties but within the expansive technologic "field of the inventions." Experts would not be able to provide advice for any other potential clients within their own field of expertise, and vendors could not participate in a patent purchase due diligence, for example, by providing data room services. *See Google LLC v. Sonos, Inc.*, No. 20-cv-3845, 2021 WL 1621875, at *2 (stating that the "proposed acquisition bar is overbroad in that it prohibits the affected individuals from having *any* involvement *at all* in activity or advice concerning the acquisition of certain types of patents or patent applications) (emphasis added).

For the reasons stated above, the Court should deny Defendants' unsupported request for an acquisition bar in these cases.

Dated: December 19, 2021 	Respectfully submitted,

By: 	*/s/ Jim Etheridge*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Brian M. Koide
Nathan K. Cummings
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com
Nathan@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@swclaw.com
**STECKLER WAYNE COCHRAN CHERRY, PLLC**
8416 Old McGregor Rd.
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via email to all counsel of record on December 19, 2021.

*/s/ Jim Etheridge*
James L. Etheridge