# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>  Plaintiff,<br><br> v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>  Defendants. | Case No. 6:20-cv-00486-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF RULE 12(c) MOTION FOR JUDGMENT ON THE BASIS OF INELIGIBILITY UNDER 35 U.S.C. § 101 OF <u>U.S. PATENT NO. 7,092,360</u>**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. THE ASSERTED CLAIMS ARE NOT PATENT-ELIGIBLE............................................3

    A. *Alice* Step One: The Claims Are Directed to an Abstract Idea ................................3

        1. At the Core of What WSOU Contends Is the Claimed Advance—Comparing Detected and Expected States About an "Element" of a Scheduler Instead of the Entirety of the Scheduler—Is the Same Abstract Idea of Monitoring by Comparing Detected and Expected States .....................3

        2. WSOU's Remaining Arguments Do Not Save the Claims at Step One ............5

    B. *Alice* Step Two: The Claims Lack an Inventive Concept .........................................9

III. CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ............................................................................................................9

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) ........................................................................................5, 6, 9

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ................................................................................................7

*Ancora Techs., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ................................................................................................7

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................1, 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ..................................................................................................5

*CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*,
  15 F.4th 1091 (Fed. Cir. 2021) ...............................................................................................10

*Data Scape Ltd. v. Western Digital Corp.*,
  816 F. App'x 461 (Fed. Cir. 2020) ...........................................................................................9

*Electric Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................................................8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................................................7

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ................................................................................................7

*In re Gale*,
  856 F. App'x 887 (Fed. Cir. 2021) .......................................................................................2, 7

*Genentech, Inc. v. Chiron Corp*,
  112 F.3d 495 (Fed. Cir. 1997) ..................................................................................................5

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ...........................................................................................5

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
    No. 19-1031-RGA, 2021 WL 4943627 (D. Del. Sept. 17, 2021) .............................................7

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ..............................................................................................7

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ..............................................................................................5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ..............................................................................................9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ..............................................................................................6

*Two-Way Media Ltd. v. Comcast Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ..............................................................................................9

*Yu v. Apple*,
    1 F.4th 1040 (Fed. Cir. 2021) .................................................................................................5

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '360 patent | U.S. Patent No. 7,092,360 |
| Asserted Claims | Claims 1, 2, 21, 22, 23, 26, 28, 29, 41, 43, and 44 of the '360 patent |
| Br. | Defendants' Rule 12(c) Motion for Judgment on the Basis of Ineligibility Under 35 U.S.C. § 101 of U.S. Patent No. 7,092,360 (D.I. 172) |
| Defendants | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. |
| First Amended Complaint | First Amended Complaint for Patent Infringement (D.I. 35) |
| Opp. | Plaintiff's Opposition to Defendants' Rule 12(c) Motion for Judgment on the Basis of Ineligibility Under 35 U.S.C. § 101 of U.S. Patent No. 7,092,360 (D.I. 186) |
| Original Complaint | Original Claim for Patent Infringement (D.I. 1) |
| WSOU | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

# TABLE OF EXHIBITS[1]

| Exhibit | Document |
|:---:|:---|
| A | '360 patent |
| B | U.S. Patent No. 6,173,325 |
| C | WSOU's January 6, 2021 Identification of Terms for Claim Construction |
| D | WSOU January 20, 2021 Preliminary Claim Constructions |
| E | U.S. Patent No. 6,028,847 |
| F | U.S. Patent No. 6,018,527 |
| G | U.S. Patent No. 6,449,255 |

---

[1] The exhibits included in this table were filed with Defendants' opening brief (D.I. 172).

**I.     INTRODUCTION**

Defendants established in their opening brief that the Asserted Claims are directed to the abstract idea of comparing a detected state to an expected state for monitoring purposes (Step One), and that the claims lack any inventive concept that amounts to "significantly more" than the abstract idea (Step Two). *See, e.g.*, Br. 6–20.

At Step One, WSOU argues in opposition that the claims "are directed to a new and inventive *monitor and scheduler* where the monitor *detects the state of an element* of the scheduler to *compare* it against a *predetermined state of that element* to determine whether the scheduler is functioning properly."[2] Opp. 11. As Defendants detailed in their opening brief, however, the intrinsic record repeatedly confirms that the '360 patent did not invent (and, in fact, does not even purport to have invented) a scheduler, scheduler element, monitor, the concept of monitoring a scheduler, or even the concept of monitoring a scheduler by comparing its detected and expected states. *See, e.g.*, Br. 13–20, 6–8. WSOU offers no contrary evidence. Nevertheless, WSOU contends that the advance of the claims is using in this comparison different *information* than what was used in prior art monitoring methods: instead of comparing information using knowledge of the "entirety" of a scheduler as was purportedly performed in prior art scheduler monitoring methods, the Asserted Claims apparently compare information concerning only a generic "element" of a scheduler. Opp. 11, 13. Regardless of what *information* is used in the comparison, however, at the core of the claims is the same abstract idea of comparing detected and expected states for monitoring purposes. The Federal Circuit has made clear that "simply restat[ing]" the abstract idea, or even "narrowing or reformulating" that idea, is not sufficient for patent eligibility. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018).

---

[2] All emphasis in quotations herein is added except where noted.

In addition, WSOU's purported advance is illusory. Nothing in the claims precludes performing the comparison using information about the entirety of a scheduler's elements. Quite the opposite, the claims are open-ended, as they recite that the monitored scheduler "element" "comprises" the recited examples of—or even the entirety of—a scheduler's elements. Finally, even if the claims did distinguish between comparing information about a scheduler "element" instead of the entirety of a scheduler (they do not), that would amount to no more than saying "compare this information and not that information," which itself is an abstract idea that requires no specific technological improvements and is insufficient for eligibility.

WSOU's remaining arguments at Step One likewise fail to save the claims from ineligibility. WSOU repeatedly relies on other elements found nowhere in the claims. For instance, WSOU promises that the claims provide "new structures" and a "particular arrangement" of components. *See, e.g.*, Opp. 1–2, 13, 15, 19. Yet WSOU never explains what those "new structures" or "particular arrangement" are, where they appear in the language of the claims, or how they require a specific technological improvement. In addition, WSOU relies on inapplicable cases involving claims entirely unrelated to monitoring by comparing detected and expected states—the focus of the claims here. At the same time, WSOU fails to substantively address any of the analogous case law that Defendants detailed in their opening brief. Br. 10–12. For example, in *In re Gale*, 856 F. App'x 887, 888–89 (Fed. Cir. 2021), the Federal Circuit held ineligible claims to monitoring a system by comparing its calculated "usage pattern" (a "monitored state") with a "predetermined usage pattern" (an "expected state"). WSOU merely concludes—without any explanation, in a footnote—that neither *Gale* nor any of Defendants' other cited cases apply because the claims in those cases "did not provide any technological improvement." Opp. 16 n.7.

At Step Two, WSOU fails to identify a single element or combination of elements in the

2

claims that could confer an inventive concept amounting to "significantly more" than the abstract idea itself. Nor does WSOU challenge any of the intrinsic evidence confirming that the claims recite only well-known components functioning in their routine manner. Br. 15–17. WSOU also does not deny that its Original and First Amended Complaints lack any contrary allegation. In a last-ditch attempt to save the claims, WSOU misrepresents the Court's claim construction order as holding that the "360 patent discloses *new structures*." Opp. 15. Again, however, WSOU never identifies what those "structures" are or why they are "new"—nor could it, as the Court never made such a finding. Instead, as Defendants explained, the Court's claim constructions found the opposite: that the claims require merely black-box and generic structures, such as basic "modules" that receive data, largely without limitation to specific structures. Br. 6–8. Thus, the Asserted Claims are ineligible and judgment on the pleadings should be granted on this basis.

## II.     THE ASSERTED CLAIMS ARE NOT PATENT-ELIGIBLE

### A.     *Alice* Step One:  The Claims Are Directed to an Abstract Idea

#### 1.     At the Core of What WSOU Contends Is the Claimed Advance—Comparing Detected and Expected States About an "Element" of a Scheduler Instead of the Entirety of the Scheduler—Is the Same Abstract Idea of Monitoring by Comparing Detected and Expected States

In opposition, WSOU argues that the Asserted Claims are patent-eligible at Step One because they "are directed to a new and inventive *monitor* and *scheduler* where the monitor *detects* the *state of an element* of the scheduler to *compare* it against a *predetermined state of that element* to determine whether the scheduler is functioning properly." Opp. 11. WSOU does not meaningfully dispute, much less address, any of the intrinsic evidence that Defendants detailed in their opening brief, which demonstrates that practically every element in the claims was nothing new, *e.g.*, a scheduler, scheduler element, monitor, the concept of monitoring a scheduler, or even the concept of monitoring a scheduler by comparing detected and expected states of the scheduler.

3

*See, e.g.*, Br. 13–20, 6–8. Indeed, WSOU offers no contrary evidence. WSOU also does not dispute that the abstract idea of comparing detected and expected states for monitoring purposes has been implemented in a wide array of contexts, including long before and outside the world of computers (*e.g.*, comparing a patient's temperature ("monitored state") to the normal body temperature of 98.6°F ("expected state")). *Id.* at 9. Nor does WSOU try to explain how the claims' broadly recited functions, such as "monitoring," "comparing," and "outputting," are performed any differently from how a human could do so in their mind or with a pen and paper. *Id.* at 3, 14.

Nonetheless, WSOU contends that the advance of the claims is the *information* used in the claimed comparison: instead of comparing information using knowledge of the "entirety" of a scheduler as was purportedly performed in prior art scheduler monitoring methods, the Asserted Claims apparently compare information concerning only a generic "element" of a scheduler. *See, e.g.*, Opp. 1, 3–4, 7, 11, 13, 19. WSOU's unsupported assertion, however, does not resolve the fundamental deficiency of the claims; regardless of what information is used in the comparison, at the heart of the claims is the same abstract idea of comparing detected and expected states for monitoring purposes. The Federal Circuit repeatedly has held that "simply restat[ing]" the abstract idea, or even "narrowing or reformulating" that idea, is not sufficient to transform that idea into eligible subject matter. *See, e.g.*, *BSG*, 899 F.3d at 1291.

In any event, WSOU's purported advance is found nowhere in the claims. The claims themselves recite no limitation precluding from the comparison information about the entirety of a scheduler. To the contrary, the claims are open-ended, as they recite that the monitored scheduler "element" "comprises" the recited examples of—or even the entirety of—a scheduler's elements. It is well settled that "comprises" is a "term of art used in claim language which means that," although "named elements are essential," "*other elements* may be added and still form a construct

4

within the scope of the claim." *Genentech, Inc. v. Chiron Corp*, 112 F.3d 495, 501 (Fed. Cir. 1997). Thus, because the patent-eligibility inquiry "must focus on the language of the [a]sserted [c]laims themselves," WSOU's purported advance, which finds no support in the claims themselves, is "irrelevant" and should be rejected. *Yu v. Apple*, 1 F.4th 1040, 1043 (Fed. Cir. 2021); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020).

Finally, even if the claims specified using in the claimed comparison only generic scheduler "elements" and precluded comparing information about the entirety of a scheduler, that would amount to no more than yet another abstract concept. Indeed, the concept of comparing one set of information versus another requires no specific technological improvements and is inadequate to confer eligibility. The Federal Circuit has consistently held that "'[a]dding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract.'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 771 (Fed. Cir. 2019) (quoting *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)).

Accordingly, the claimed comparison of a scheduler's detected and expected states is abstract and patent-ineligible irrespective of what information is used in that comparison.

    **2.  WSOU's Remaining Arguments Do Not Save the Claims at Step One**

<u>**Unrecited Elements.**</u> WSOU repeatedly argues that the Asserted Claims provide "new structures" and a "particular arrangement," and that the claims "improve the functionality of a network." *See, e.g.*, Opp. 1–2, 13, 14, 15, 19. Yet, WSOU never actually identifies what the "new structures" or "particular arrangement" are, where they can be found in the language of the claims, or what specific technological improvement they provide. Indeed, according to the language of the claims, the monitored scheduler itself is nothing more than an abstract "computer generated *model*" of a scheduler. *See, e.g.*, Ex. A ('360 patent), 13:15–16, 16:13–14. Thus, WSOU's conclusory, unsupported assertions should be ignored. *Glasswall Solutions Ltd. v. Clearswift Ltd.*,

754 F. App'x 996, 999 (Fed. Cir. 2018) (rejecting conclusory assertions that the claims at issue were "novel" and "improve[d] the [relevant] technology"); *Am. Axle*, 967 F.3d at 1293 (holding that unrecited elements are "irrelevant" to the eligibility inquiry).

Furthermore, WSOU fails to identify any limitation in the claims specifically directed to improving "the functionality of the network"; indeed, WSOU points to no particular scheduler design, scheduler monitor design, or any other element recited in the claims that is specifically tied to a network or a network's improved functionality. Nor does WSOU offer any support for its assertion. WSOU likewise fails to confront the related problem that the claims do not even specify where the results of the comparison are sent or what to do with that information—whether and how to improve the operation of a "computer generated model" of a scheduler, a network, or something else. Br. 14–15. The claims simply end with "outputting" the results of the comparison and nothing more. *Id.*

**WSOU's Inapplicable Case Law.** WSOU represents that several cases, such as *SRI* and *Packet Intelligence*, establish that the Asserted Claims are patent-eligible. Opp. 12–14. Not one of those cases, however, involved claims that remotely resemble the nature of the '360 patent claims; namely, monitoring whether something is "functioning properly" by comparing information about its monitored and expected states.

WSOU, for example, appears to rely on *SRI* and *Packet Intelligence* for the superficial reason that the claims in those cases contained the word "monitor." But even a cursory review of those claims reveals they had nothing to do with monitoring whether something is "functioning properly," let alone by comparing its monitored and expected states. Instead, the *SRI* and *Packet Intelligence* claims involved *ensuring network security*, such as preventing against hackers or other malicious attacks to networks, and thus those cases are inapplicable here. *SRI Int'l, Inc. v. Cisco*

6

*Sys., Inc.*, 930 F.3d 1295, 1301, 1303 (Fed. Cir. 2019) (claims to "identifying hackers or potential intruders into [a] network" using "hierarchical event monitoring and analysis within an enterprise network"); *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1308 (Fed. Cir. 2020) (claims that provided an "improved ability to classify and diagnose network congestion while providing increased network visibility to identify intrusions and malicious attacks").

The claims in WSOU's other cited cases are even further divorced from the focus of the '360 patent claims and had nothing to do with monitoring at all. Opp. 11–14 (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (claims "to a method of providing computer security by scanning a downloadable and attaching the results of that scan to the downloadable itself in the form of a 'security profile'")); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (claims to a "self-referential table"); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1344 (Fed. Cir. 2018) (claims to "limiting a computer's running of" unauthorized "software" on a computer); *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302–03 (Fed. Cir. 2016) (claims to "processing network accounting information"); *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031-RGA, 2021 WL 4943627, at *2 (D. Del. Sept. 17, 2021) (claims to "initiating a support session for a consumer device using a concierge device"). WSOU's misplaced reliance on these cases should be ignored.

**WSOU's Failure to Address Analogous Cases.** On the other hand, WSOU fails to distinguish or even substantively address any of Defendants' cited cases that held ineligible claims directly analogous to those of the '360 patent. *See* Br. 10–12. For example, in *In re Gale*, 856 F. App'x 887, 888–89 (Fed. Cir. 2021), the Federal Circuit held ineligible claims to monitoring a system by comparing a calculated "usage pattern" of the system (a "monitored state") with a "predetermined usage pattern" for the system (an "expected state"), just as the '360 patent claims

7

recite monitoring scheduler operation by comparing monitored and expected states of the scheduler. Br. 10, 12. Similarly, in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351–52 (Fed. Cir. 2016), the Federal Circuit held ineligible claims to "systems and methods for performing real-time performance monitoring of an electric power grid" by receiving data about the grid, analyzing it, and presenting the results of the analysis. Br. 11–12. Here, the Asserted Claims likewise focus on collecting information about a scheduler (its "monitored state"), analyzing that information (at most, comparing the "monitored state" with an "expected state"), and "presenting the results" of the analysis ("outputting the results of the comparison"). *Id.* The extent of WSOU's response is a perfunctory footnote that rejects all of these cases as involving claims that "did not provide any technological improvement." Opp. 16 n.7.

**Functional Claim Language.** Finally, WSOU disputes that the claims invoke purely functional claim language, but WSOU merely states without explanation that "[t]his is wrong in light of the specification and the claims themselves, which establish that the claims represent clear improvements over prior art monitors." Opp. 16–17. Again, WSOU never identifies what those "clear improvements" are. As discussed above, if the purported "improvement" of the claims is comparing information about an "element" of a scheduler instead of the entirety of the scheduler, that still is insufficient for eligibility because it is focused on the same abstract idea of monitoring by comparing detected and expected states, or the equally abstract concept of comparing one set of information versus another. *Supra*, Section II.A.1. In any event, WSOU never addresses why the broad terms recited in the Asserted Claims, such as "monitoring," "comparing," and "outputting" are *not* purely functional. Br. 14–15. Nor does WSOU identify any limitation recited in the claims that specifies *how* to perform these functions or "achieve these results in a non-

8

abstract way"; indeed, there is none. *Id.* (quoting, *e.g.*, *Two-Way Media Ltd. v. Comcast Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)).

### B. *Alice* Step Two: The Claims Lack an Inventive Concept

WSOU fails to identify a single element or combination of elements recited in the Asserted Claims that could confer an "inventive concept" amounting to "significantly more than a patent upon the [abstract idea] itself." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). WSOU does not dispute, for example, that the recited "monitor," "scheduler," or scheduler "elements" are well known and conventional components functioning in their routine manner. *See* Opp. 18–19; Br. 15–17. WSOU also does not challenge the intrinsic evidence confirming that the claims employ only known components operating as intended. Br. 16–17. In addition, WSOU does not deny that its Original and First Amended Complaints lack any allegation that could support an inventive concept. Br. 20. Nor does WSOU identify any differences among the Asserted Claims that would materially affect the eligibility inquiry. *See* Opp. 20; Br. 17–20; *Data Scape Ltd. v. Western Digital Corp.*, 816 F. App'x 461, 464 (Fed. Cir. 2020) (resolving the issue of patent eligibility based on a representative claim where the patentee "presented no separate argument for eligibility of any claim aside from" one particular claim); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1357 n.1 (Fed. Cir. 2020) (same).

Nonetheless, WSOU contends that "even if the components (such as 'monitors,' 'schedulers,' and 'elements') were known, the *particular arrangement* of these components was non-conventional and resulted in a technical improvement." Opp. 19. As explained above, though, WSOU fails to identify what that "particular arrangement" is, where it appears in the language of the Asserted Claims, much less how it provides a specific technological improvement that amounts to "significantly more" than the abstract idea itself. *Supra*, Section II.A.2; *Am. Axle*, 967 F.3d at 1293. In addition, WSOU argues that the Asserted Claims are analogous to the patent-eligible

9

claims in *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021). Opp. 17–18. But the Federal Circuit held that the *CosmoKey* claims—which dealt with the distinct technology of "authenticating the identity of a user performing a transaction at terminal"—were patent-eligible because they "requir[ed] a specific set of ordered steps that go beyond [an] abstract idea": "overcoming hacking by ensuring that the authentication function is normally inactive, activating only for a transaction, communicating the activation within a certain time window, and thereafter ensuring that the authentication function is automatically deactivated." 15 F.4th at 1099. Here, in contrast, the Asserted Claims recite no such "specific set of ordered steps"—and WSOU points to none. Instead, they simply recite the broad functions of "monitoring," "comparing," and "outputting" to perform the claimed abstract comparison.

Finally, in a transparent attempt to manufacture an inventive concept that might save the claims, WSOU flatly misrepresents the Court's claim construction order as "rul[ing] that [the] 360 patent discloses *new structures*." Opp. 15. Once again, however, WSOU fails to explain what those "structures" are and why they are "new" for the purposes of patent eligibility. That is because the Court never made such a ruling. Rather, as Defendants explained in their opening brief, the Court's claim constructions (and WSOU's own arguments) dictate that the claims at best require only black-box and generic components, such as a basic "module" that receives data. Br. 7–8.

Accordingly, the Asserted Claims are directed to the abstract idea of comparing detected and expected states for monitoring purposes, and lack any inventive concept that amounts to "significantly more" than that abstract idea. The claims therefore are patent-ineligible.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to hold that the Asserted Claims are not patent-eligible under 35 U.S.C. § 101, and therefore grant judgment on the pleadings in Defendants' favor and dismiss the First Amended Complaint with prejudice.

Dated:  May 4, 2022           By:   */s/ Barry K. Shelton*
                                    Barry K. Shelton
                                    Texas State Bar No. 24055029
                                    bshelton@winston.com
                                    **WINSTON & STRAWN LLP**
                                    2121 North Pearl Street, Suite 900
                                    Dallas, TX 75201
                                    Telephone:  214.453.6407
                                    Facsimile:  214.453.6400

                                    Benjamin Hershkowitz
                                    bhershkowitz@gibsondunn.com
                                    Brian A. Rosenthal
                                    brosenthal@gibsondunn.com
                                    Allen Kathir
                                    akathir@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    200 Park Avenue
                                    New York, NY  10166-0193
                                    Telephone:  212.351.4000
                                    Facsimile:  212.351.4035

                                    Y. Ernest Hsin
                                    ehsin@gibsondunn.com
                                    Jaysen S. Chung
                                    jschung@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    555 Mission Street, Suite 3000
                                    San Francisco, CA  94105-0921
                                    Telephone:  415.393.8200
                                    Facsimile:  415.393.8306

                                    Ryan K. Iwahashi
                                    riwahashi@gibsondunn.com
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    1881 Page Mill Road
                                    Palo Alto, CA  94304-1211
                                    Telephone:  650.849.5300
                                    Facsimile:  650.849.5333

                                    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on May 4, 2022, I caused the preceding document to be served on all counsel through the Court's ECF system.

                     */s/ Barry K. Shelton*
                     Barry K. Shelton