**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.<br><br>Defendants. | Case No. 6:20-cv-00480-ADA-DTG<br>Case No. 6:20-cv-00481-ADA-DTG<br>Case No. 6:20-cv-00486-ADA-DTG<br><br>**JURY TRIAL DEMANDED**<br><br> |

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN PORTIONS OF
MR. ROY WEINSTEIN'S EXPERT REPORT**

# TABLE OF CONTENTS

I.      LEGAL STANDARDS ...........................................................................................1

II.     ARGUMENT .......................................................................................................2

        A.      The Court Should Exclude Mr. Weinstein's Apportionment Opinions That
                Wholly Adopt Dr. McClellan's Deficient Apportionment Analysis.........................2

        B.      Mr. Weinstein's Inclusion of Revenue From Noninfringing Services in His
                Royalty Base Renders His Opinion Inadmissible .......................................................4

                1.      Federal Circuit Precedent Requires That the Royalty Base Be Tied to the
                        Invention's Footprint in the Marketplace .........................................................5

                2.      Mr. Weinstein's Justification and Methodology for Including Profits
                        From Convoyed Sales Is Flawed .......................................................................8

        C.      Mr. Weinstein's Failure to Differentiate Between Direct Infringement and
                Indirect Infringement Results in Including Noninfringing Acts in His
                Damages Base, Which Renders His Opinions Inadmissible ...................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A&L Tech. v. Resound Corp.*,
    1995 WL 415146 (N.D. Cal. June 29, 1995) ............................................................7

*CloudofChange, LLC v. NCR Corp.*,
    6:19-cv-00513-ADA, D.I. 203 (W.D. Tex. Nov. 1, 2021) ....................................1

*CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)....................................5, 6, 8, 10

*Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015)....................................................1, 5, 6, 8, 10

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)............................................................................................1

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018)..................................................5, 7, 8, 10, 12

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)...........................................................................1

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    2015 WL 4272870 (N.D. Cal. July 14, 2015).....................................................6

*Fujifilm Corp. v. Benun*,
    605 F.3d 1366 (Fed. Cir. 2010)...........................................................................7

*Genband US LLC v. Metaswitch Networks Corp.*,
    2015 WL 12911530 (E.D. Tex. Sept. 30, 2015).............................................2, 3

*Georgia-Pacific v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................7

*Gonza LLC v. Mission Competition Fitness Equip. LLC*,
    2021 WL 5657193 (W.D. Tex. Dec. 1, 2021) ...............................................11, 12

*Good Tech. Corp. v. Mobileiron, Inc.*,
    2015 WL 4090431 (N.D. Cal. July 5, 2015).......................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)...............................................................................6

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...........................................................................7

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ........................................................................1

*OPTi, Inc. v. Apple, Inc.*,
   2009 WL 10677791 (E.D. Tex. Apr. 3, 2009) .........................................7

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,
   No. 6:20-cv-00969-ADA, D.I. 228 (W.D. Tex. Oct. 4, 2022)..................2

*Realtime Data, LLC v. Actian Corp.*,
   2017 WL 11661897, (E.D. Tex. Mar. 24, 2017) .........................8, 9, 10

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   22 F. Supp. 3d 585 (E.D. Va. 2013) .......................................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010).................................................................5

*Rite–Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)..............................................................6, 8

*S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,
   315 F.3d 533 (5th Cir. 2003) ................................................................11

*Shockley v. Arcan, Inc.*,
   248 F.3d 1349 (Fed. Cir. 2001).................................................................1

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   33 F. Supp. 3d 984 (N.D. Ill. 2014) .........................................................8

*Sparling v. Doyle*,
   2015 WL 4528759 (W.D. Tex. July 27, 2015) ....................................2, 4

*Spring St. Apts. Waco, LLC v. Philadelphia Indem. Ins. Co.*,
   2017 WL 2805014 (W.D. Tex. June 28, 2017) .......................................2

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)............................................................1, 6

*Versata Software Inc. v. SAP Am., Inc.*,
   2011 WL 4017939 (E.D. Tex. Sept. 9, 2011) ..........................................7

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).....................................................5, 7, 10

**RULES**

Fed. R. Evid. 702 .........................................................................................1

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '133 patent | U.S. Patent No. 7,539,133 |
| '360 patent | U.S. Patent No. 7,092,360 |
| '800 patent | U.S. Patent No. 9,164,800 |
| Asserted Patents | U.S. Patent No. 7,539,133; U.S. Patent No. 7,092,360; U.S. Patent No. 9,164,800 |
| Defendants | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. |
| Plaintiff / WSOU | WSOU Investments, LLC |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| A | Transcript of December 1, 2022 Deposition of Roy Weinstein ("Weinstein Tr.") |
| B | Expert Report of Roy Weinstein, served on October 3, 2022 ("Weinstein Rpt.") |
| C | Expert Report of Stan McClellan, Ph.D., served on October 3, 2022 ("'360 Inf. Rpt.") |
| D | Expert Report of Kevin Jeffay, Ph.D., served on November 4, 2022 ("Jeffay Reb. Rpt.") |
| E | Transcript of December 21, 2020 Hearing, 20-cv-486 ("12/21/20 Hearing Tr.") |
| F | U.S. Patent No. 9,164,800 |
| G | Transcript of April 27, 2022 Deposition of Craig Connors ("Connors Tr.") |
| H | Expert Report of Tajana Rosing, Ph.D., served on November 4, 2022 ("Rosing Reb. Rpt.") |
| I | Transcript of November 23, 2022 Deposition of Stan McClellan, Ph.D. ("McClellan Nov. Tr.") |
| J | WSOU's Final Infringement Contentions for the '133 patent, served on June 25, 2021 ("WSOU FIC") |
| K | Exhibits to Expert Report of Roy Weinstein, served on October 3, 2022 ("Weinstein Exs.") |

The Court should exclude certain opinions of WSOU's damages expert, Roy Weinstein, for the following reasons:  (1) he directly adopts the unreliable apportionment analysis conducted by Dr. Stan McClellan (for all patents); (2) he improperly includes in his royalty base VMware's profits from services, violating established Federal Circuit precedent requiring that damages be tied to the claimed invention's footprint in the marketplace (for all patents); and (3) he fails to differentiate between direct infringement and indirect infringement (the Court has dismissed the latter), and thus improperly includes noninfringing activities in the royalty base ('800/'133 patents).

## I.    LEGAL STANDARDS

Expert testimony is admissible only if it "is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, 597 (1993).  If a patentee proffering expert testimony "fails to tie the theory to the facts of the case, the testimony must be excluded."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  The party offering expert testimony has the burden to prove that testimony's admissibility.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

It is particularly important that courts exercise their *Daubert* gatekeeping authority when evaluating expert opinions on patent damages "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation[.]"  *Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).  Permitting expert testimony that makes assumptions "without any basis in economic reality" is reversible error.  *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363 (Fed. Cir. 2001).  Given the inherent dangers in calculating patent damages, courts routinely exclude damages expert testimony in patent cases.  *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018); *CloudofChange, LLC v. NCR Corp.*, 6:19-cv-00513-ADA, D.I. 203 (W.D. Tex. Nov. 1, 2021).

## II.   ARGUMENT

### A.   The Court Should Exclude Mr. Weinstein's Apportionment Opinions That Wholly Adopt Dr. McClellan's Deficient Apportionment Analysis

"Experts must undertake their own analyses and may not blindly rely on the opinions of others." *Genband US LLC v. Metaswitch Networks Corp.*, 2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015); *see Sparling v. Doyle*, 2015 WL 4528759, at *36 (W.D. Tex. July 27, 2015) ("[I]nsofar as Dr. Rusyniak blindly adopts [the other] experts' opinions [that had been excluded], Dr. Rusyniak's opinion is unreliable.").  "If the foundational data underlying opinion testimony is unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA, D.I. 228 at *12 (W.D. Tex. Oct. 4, 2022) (excluding expert testimony that "rel[ied] entirely on the opinions provided" in an excluded document).  These principles provide three separate reasons to strike Mr. Weinstein's entire apportionment analysis.

***First***, as explained in Defendants' Motion to Exclude Dr. McClellan's apportionment opinions, Dr. McClellan's apportionment analysis is unreliable and must be excluded.[1] █████

███████████████████████████████████████████████████████████

███████████████████████████████████  This fact alone is enough to render his "analysis" insufficient under *Daubert*.  *See Spring St. Apts. Waco, LLC v. Philadelphia Indem. Ins. Co.*, 2017 WL 2805014, at *6 (W.D. Tex. June 28, 2017) ("Because Harned's opinions are unreliable, any opinions made by O'Leary and Smith based on Harned's opinions are likewise unreliable.").  Because Mr. Weinstein relied on Dr. McClellan's flawed and unreliable analysis for

---

[1] ████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

his apportionment, so too must Mr. Weinstein's apportionment conclusions be excluded.  *See Ravgen, Inc.*, No. 6:20-cv-00969-ADA, at *12.

**Second**, if Dr. McClellan's apportionment analysis is excluded, Mr. Weinstein's report contains no substitute independent analysis. ██████████████████████████████

████████████████████



Ex. B (Weinstein Rpt.) ¶ 99. ██████████████████████████████████████████

████████████████████████████████████████████. *Id.* ¶ 100, Table 4. Because his analysis wholly relied on Dr. McClellan's flawed apportionment percentages without any independent analysis, his conclusions are unreliable under *Daubert* and Rule 702.

**Finally**, even if Dr. McClellan's apportionment analysis is not excluded, Mr. Weinstein's blind adoption of Dr. McClellan's conclusions renders Mr. Weinstein's apportionment analysis unreliable and unsound.  *See Genband*, 2015 WL 12911530, at *2. ████████████████████



Ex. B (Weinstein Rpt.) ¶ 79. ██████████████████████████. *Id.* ¶ 79 n.123. ██

██████████████████████████████████████████

██████████████ Ex. C ('360 Inf. Rpt.) ¶¶ 43–66, 292.[2]  And as Defendants' technical

---

[2] ████████████████████████████████████████████████████████████

██████████████████████ Ex. C ('360 Inf. Rpt.) ¶ 292.

██████████████████████ *Id.* ¶¶ 292–93.

expert explains, ████████████████████████████████████

███████████████████████████████████████████████████

Ex. D (Jeffay Reb. Rpt.) ¶¶ 205–08.  Thus, not only did Mr. Weinstein blindly adopt Dr. McClellan's flawed conclusions about the relative contributions of the allegedly patented features to the accused products, he also blindly adopted conclusions that do not even exist.

As explained in Defendants' Motion to Exclude, Dr. McClellan's apportionment analysis should be excluded entirely as unreliable; thus, Mr. Weinstein's profit apportionment analysis—which is wholly based on Dr. McClellan's opinions—for all three patents should also be excluded entirely.  *Sparling*, 2015 WL 4528759, at *36.[3]  Even if Dr. McClellan's analysis is not excluded, Mr. Weinstein's analysis still should be, as his blind adoption and unsupported application of Dr. McClellan's apportionment percentages renders his conclusions unreliable.

### B.    Mr. Weinstein's Inclusion of Revenue From Noninfringing Services in His Royalty Base Renders His Opinion Inadmissible

Mr. Weinstein improperly includes ████████████████████████████



█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████.  Ex. K (Weinstein Exs.) Exs. 15-1, 15-2. █

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████  Ex. A (Weinstein Tr.) 90:25–91:7, 111:16–20; *see,*

---

[3] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████.

*e.g.*, Ex. C ('360 Inf. Rpt.). 

.

An expert seeking to use a royalty base that "encompass[es] components not covered by the patent," *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014),[4] would generally invoke the entire market value rule ("EMVR") as justification,

. Ex. A (Weinstein Tr.) 69:16–18.

Thus, his royalty base analysis is deficient because (1) he improperly included profits from noninfringing, unaccused services in the royalty base; and (2) even if such services profits could be included, he failed to justify their inclusion here.

### 1. Federal Circuit Precedent Requires That the Royalty Base Be Tied to the Invention's Footprint in the Marketplace

Mr. Weinstein's use of revenues from services contravenes settled Federal Circuit precedent that requires a proper royalty base to be tied "to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *see also* Ex. B (Weinstein Rpt.) ¶ 31 (reciting this principle). "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411–12 (Fed. Cir. 2018). Thus, "to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

---

[4] Note Mr. Weinstein was the expert that inaccurately calculated a royalty base in *VirnetX*.

The one narrow exception to this rule is the EMVR, which "allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Uniloc*, 632 F.3d at 1318 ("[T]he patentee … must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features … or show that the entire value of the whole machine … is properly or legally attributable to the patented feature." (citation omitted)).  In either scenario, the Federal Circuit has consistently required a royalty base to be grounded in the accused feature, so "damages awarded for patent infringement '[] reflect the value attributable to the infringing features of the product, and no more.'"  *CSIRO*, 809 F.3d at 1301.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████  Ex. A (Weinstein Tr.) 90:25–91:7.  Although consideration of sales of associated, noninfringing products and services in determining a reasonable **royalty rate** is sanctioned by the *Georgia-Pacific* factors,[5] courts have generally refused to allow inclusion of such sales in the **royalty base**, which Mr. Weinstein's analysis improperly does.  The Federal Circuit has cautioned that "[the] issue of royalty base is not to be confused with the relevance of anticipated collateral sales to the determination of a reasonable royalty rate."  *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 n.9 (Fed. Cir. 1995).  Courts have excluded damages experts' attempts to use "product[s] that do[] not practice the patent at issue" to expand the royalty base for damages because it "would overcompensate Plaintiff for the alleged infringement."  *Finjan, Inc. v. Blue*

---

[5] ████████████████████████████████████████████████████████
████████████████████████████████  Ex. B (Weinstein Report) ¶ 62 (emphasis added).

*Coat Sys., Inc.*, 2015 WL 4272870, at *9 (N.D. Cal. July 14, 2015); *A&L Tech. v. Resound Corp.*, 1995 WL 415146, at *1 (N.D. Cal. June 29, 1995) (holding "[c]onvoyed sales [would] not be included in the royalty base" because it should only include "sales of infringing products to avoid running afoul of the policy in patent law against extending patents beyond their lawful scope").

Because services are not accused and do not infringe, *see, e.g.*, Ex. J (WSOU's FIC), the only proper basis for including them in the royalty base would be the EMVR.  *See Enplas*, 909 F.3d at 412 n.3 (acknowledging "patentees may sometimes recover damages for 'convoyed sales'" under the EMVR); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010) (upholding damages expert opinion that "included both infringing and non-infringing [products] in the royalty base" because defendants were unable "to segregate infringing [products] from non-infringing [products]").  ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

       ███████████████████████    ███████████████████████

███████████████████████████████████████████████████.

*VirnetX*, 767 F.3d at 1326.[6]  ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████.[7]  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) ("[T]he

---

[6] Mr. Weinstein's opinions have been excluded for failure to properly apply the EMVR on several prior occasions.  *See, e.g.*, *Versata Software Inc. v. SAP Am., Inc.*, 2011 WL 4017939, at *4 (E.D. Tex. Sept. 9, 2011); *OPTi, Inc. v. Apple, Inc.*, 2009 WL 10677791, at *2 (E.D. Tex. Apr. 3, 2009).

[7] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

Ex. A (Weinstein Tr.) 108:5–13 (emphasis added); *see Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor No. 6 as "[t]he effect of selling the ***patented***

patentee must prove that the ***patent-related feature*** is the basis for customer demand" (emphasis added) (citation omitted)).  ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  Ex. B (Weinstein Rpt.) ¶¶ 98–100.

Absent proper application of the EMVR, "[t]he Federal Circuit does not extend liability to include items that were sold with the infringing device 'only as a matter of convenience or business advantage.'"  *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 996 (N.D. Ill. 2014) (quoting *Rite-Hite*, 56 F.3d at 1550).  Accordingly, Mr. Weinstein's damages opinions do not "reflect the value attributable to the infringing features of the product, and no more," and must be excluded.  *See CSIRO*, 809 F.3d at 1301; *see also Good Tech. Corp. v. Mobileiron, Inc.*, 2015 WL 4090431, at *5–6 (N.D. Cal. July 5, 2015) (excluding damages opinion of Mr. Weinstein as "unsound" for improperly including "the value of unpatented functionalities" in his royalty base).

### 2. Mr. Weinstein's Justification and Methodology for Including Profits From Convoyed Sales Is Flawed

Federal Circuit precedent prohibits Mr. Weinstein from including profits from unaccused services in his royalty base without invoking the EMVR.  *Enplas*, 909 F.3d at 411–12.  Even if he could do so, his justification and the methodology he employs are both flawed and fail to satisfy the standard outlined in *Realtime Data, LLC v. Actian Corp.*, in which one court permitted inclusion of convoyed sales only if a patentee "present[s] a clear explanation of 1) why and how the purported convoyed sales are tied to the sales of the accused products and 2) what value of the royalty base is attributable to the accused products themselves versus the convoyed sales."  2017 WL 11661897, at *3 (E.D. Tex. Mar. 24, 2017).  Mr. Weinstein's analysis fails on both accounts.

---

***specialty*** in promoting sales of other products of the licensee" (emphasis added)).



Ex. B (Weinstein Rpt.) ¶ 96 n.153; ¶ 97 n.155.[8]

*Id.* ¶ 62 n.100.

Ex. A (Weinstein Tr.) 160:24–161:12.

Also problematic is his failure to "determine the ultimate apportionment value attributable to any convoyed sales he believes should be included in the royalty base." *Realtime Data*, 2017 WL 11661897, at *4.

Ex. K (Weinstein Exs.) Ex. 14. "Simply assuming without explanation or analysis that it is appropriate to apply the same apportionment value to both the accused products and convoyed sales, as Mr.

---

[8] As stated above, Mr. Weinstein's focus on whether the ***accused products*** drive sales of services, as opposed to whether the ***patented features*** drive such sales, further demonstrates why the EMVR cannot be used to justify Mr. Weinstein's inclusion of services in the royalty base.

[Weinstein] does in his report, is insufficient under *Daubert*."  *Realtime Data*, 2017 WL 11661897, at *4 (striking expert opinion "relating to the inclusion of support services in his royalty base").

Thus, "[b]ecause Weinstein did not 'carefully tie proof of damages to the claimed invention's footprint in the market place,' his testimony on the royalty base under this approach [i]s inadmissible and should [be] excluded."  *VirnetX*, 767 F.3d at 1329 (citation omitted); *see CSIRO*, 809 F.3d at 1301 ("The essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  In short, apportionment." (quotation marks omitted)).

**C.**     **Mr. Weinstein's Failure to Differentiate Between Direct Infringement and Indirect Infringement Results in Including Noninfringing Acts in His Damages Base, Which Renders His Opinions Inadmissible**

████████████████████████████████████████████████████████████

█████████████████████  Ex. B (Weinstein Rpt.) ¶ 22, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Ex. A (Weinstein Tr.) 25:15–26:5.  With indirect infringement dismissed from the case, however, Mr. Weinstein's damages must be limited to acts of alleged direct infringement, but he has failed to tailor his damages models accordingly.  ████████████████████████████

████████████████████████████████  *Enplas*, 909 F.3d at 411–12; *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 596 (E.D. Va. 2013) ("By failing to use the portion of the revenue stream attributable to the infringing features, the entirety of his damages analysis is unreliable."); *supra* Section II.B.

Indirect infringement claims indisputably are ***not in this case***.  This Court dismissed indirect infringement for all patents on December 21, 2020.  Ex. E (12/21/20 Hearing Tr.) at 76:16–17.  WSOU failed to timely re-plead its indirect infringement claims, and therefore they are no

longer part of this litigation.  *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536–37 (5th Cir. 2003).  Thus, any acts that rely on a theory of indirect infringement are ***noninfringing*** and therefore cannot be considered in the reasonable royalty calculation.[9]



█████  "To establish [direct] infringement of a patent, ***every limitation*** set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent."  *Gonza LLC v. Mission Competition Fitness Equip. LLC*, 2021 WL 5657193, at *2 (W.D. Tex. Dec. 1, 2021) (emphasis added) (Albright, J.).   Here, asserted claim 16 of the '800 patent depends from independent claim 13, and requires a cloud controller comprising "[A] a memory; and [B] a processor in communication with the memory."  Ex. F ('800 Patent). ███████████████

[9] ███████████████████████████████████████████████████████████████████ *See* Defendants' Motion to Strike Certain Portions of Dr. McClellan's Expert Report Regarding Indirect Infringement.

[10] ███████████████████████████████████████████████████. Ex. A (Weinstein Tr.) 76:2–11.

[11] ███████████████████████████████████████████████████████.



. Ex. B (Weinstein Rpt.) ¶¶ 72, 90, 120, Table 5; Ex. K (Weinstein Exs.) Exs. 6, 7, 8.

*Id.*

he violates the

bedrock principle that "[t]he royalty base for reasonable royalty damages cannot include activities

that do not constitute patent infringement." *Enplas*, 909 F.3d at 411–12; *see also Gonza*, 2021

WL 5657193, at *2.

.[12]

These problems also infect Mr. Weinstein's opinions regarding the '133 patent.

*See* Ex. G (Connors Tr.) 192:1–7

; *see also* Ex. H (Rosing Rebuttal Rpt.) ¶ 133.

In sum, because Mr. Weinstein's damages opinion improperly "include[s] activities that

do not constitute patent infringement," *Enplas*, 909 F.3d at 411–12, it must be excluded.

---

[12]

.

Dated: December 19, 2022          By:   */s/ Brian A. Rosenthal*

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX  75201
Telephone:  214-453-6407
Facsimile:  214-453-6400

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 19, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (which is filed under seal) through email.

*/s/ Brian A. Rosenthal*
Brian A. Rosenthal
